2017 PA Super 284

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LIONEL B. BULLOCK, | : | |
| | : | |
| Appellant | : | No. 3700 EDA 2015 |

Appeal from the Judgment of Sentence August 19, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0004571-2014

BEFORE: OTT, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY DUBOW, J.:                            **FILED AUGUST 31, 2017**

Appellant, Lionel B. Bullock, appeals from the Judgment of Sentence entered in the Philadelphia County Court of Common Pleas, following his convictions after a bench trial for Aggravated Assault, Simple Assault, Recklessly Endangering Another Person ("REAP"), and Terroristic Threats.[1] He challenges, *inter alia*, the sufficiency of the evidence and the discretionary aspects of his sentence. After careful review, we affirm.

The relevant facts, as gleaned from the certified record and the trial court's Pa.R.A.P. 1925(a) Opinion, are as follows. Appellant's 92-year-old mother, Jessie Carter, lived on the second floor of her two-story home at

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2702; 18 Pa.C.S. § 2701; 18 Pa.C.S. § 2705; and 18 Pa.C.S. § 2706, respectively.

7020 Woolston Avenue in Philadelphia. Appellant and his two minor children also lived in Carter's home. Carter required physical assistance with many daily tasks, and due to her lack of mobility was confined mainly to her bed, using a walker to get to the bathroom. Carter depended on an oxygen machine at all times, which required electricity to operate and was visible in her bedroom. A hospice service provided Carter with equipment.

Michelle Reid, a Certified Nursing Assistant, began working three days each week in August or September of 2013 to assist Carter with personal hygiene, as well as cleaning her room, obtaining food, and other tasks.

When Reid began the job, Carter was living in very unsanitary and unsafe conditions.[2] Reid attempted to wash Carter's laundry, but Appellant would not permit her to do anything for Carter that required leaving the second floor, including using the washing machine or getting ice for Carter.[3] In addition, Appellant was verbally and emotionally abusive to Reid and Carter. Appellant constantly pestered Reid during her work hours about when she would be leaving the house, telling her frequently that she "didn't have to be here." N.T. Trial, 12/12/14, at 13. Appellant would also tell

_____

[2] There were soiled adult diapers and fecal matter throughout the bedroom and bathroom, bedsheets soaked with urine, a very strong odor in the bedroom, dirty laundry, and stained dishes.

[3] Appellant told Reid the washing machine was broken, but Reid observed Appellant using the washing machine at other times. Appellant would not do Carter's laundry.

Carter that she did not need a nurse and that "she was just using" Reid. ***Id.*** Appellant also spoke to Carter in an angry and negative tone, would yell Bible verses at Carter, and would yell at Carter from throughout the house about the strong odor.

Appellant instructed his minor daughter that she was not allowed to help Carter, her grandmother, and would not allow Carter's niece into the house to care for Carter. In addition, although Meals on Wheels delivered food for Carter to the house, Appellant would not give Carter all of the food from the deliveries, and instead would eat or give away some of the food.

On October 28, 2013, Carter frantically called Reid and told her that "her son, [Appellant], . . . said that the electric would be cut off today and she doesn't know what she's going to do." ***Id.*** at 25.

When Reid arrived at the house, she expressed her concerns to both Appellant and the PECO employee that shutting off the electricity meant Carter's oxygen machine would not work and she would not be able to breathe. Appellant ignored Reid and insisted on shutting off the electricity without expressing any legitimate reason.[4] Despite Reid's best efforts, the PECO employee eventually shut off the electricity to Carter's home, and Appellant left the property.

---

[4] Appellant's striking indifference was not unexpected to Reid, who recalled that the previous week Appellant stated, "I don't know what y'all going to do with her, but this electric is getting cut off. I'm tired of all these nurses running in and out of here, I'm going to put a stop to that." ***Id.*** at 71-73.

Reid immediately attempted to set up a backup manual oxygen tank for Carter. After receiving assistance over the phone from the hospice company, Reid managed to make the manual oxygen tank operable for Carter after a 45-minute struggle. Although the hospice company sent over a few additional tanks, the oxygen would last a total of only eight hours. Reid eventually called police for assistance.

Sergeant Vincent Butler responded to Carter's home and observed the deplorable conditions in Carter's bedroom. He spoke with Carter, who was upset and scared that she would suffocate and die. He also observed the oxygen machine, to which the electricity "was clearly turned off." *Id.* at 95. Sergeant Butler asked Appellant's minor children to call Appellant. Appellant hung up on Sergeant Butler at least once, and repeatedly stated that he did not want to speak with Sergeant Butler. Appellant refused to inform Sergeant Butler of what arrangements he had made for his mother's care, and told Sergeant Butler "[i]t's your problem." N.T. Trial, 2/9/15, at 11-12. Sergeant Butler clarified that Appellant referred to his mother as "it" during this phone conversation. *Id.*

Sergeant Butler called an ambulance, and the emergency responders transported Carter to the hospital. The hospital later transferred Carter to a hospice care facility, where Carter passed away a few weeks later. Sergeant Butler reported the case to Special Victims Unit. Police eventually arrested Appellant and charged him with Attempted Murder, Aggravated Assault,

Simple Assault, REAP, Terroristic Threats, and Neglect of Care of a Dependent Person.

Following a bifurcated bench trial on December 12, 2014, and February 9, 2015, at which Michelle Reid and Sergeant Butler testified, the trial court convicted Appellant of Aggravated Assault, Simple Assault, REAP, and Terroristic Threats.[5] The trial court originally sentenced Appellant to six to twelve years' incarceration for Aggravated Assault, followed by a consecutive term of five years' probation for Terroristic Threats.[6] Both Appellant and the Commonwealth filed Motions for Reconsideration. Following a hearing on August 19, 2015, the trial court imposed a new sentence of ten to twenty years' incarceration for Aggravated Assault, followed by a consecutive term of five years' probation for Terroristic Threats. Appellant filed another Motion for Reconsideration, which the trial court denied on November 13, 2015.

Appellant filed a timely Notice of Appeal on December 11, 2015. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents five issues on appeal:

1. Did not the lower court err and violate the *corpus delicti* rule in admitting, over objection, [A]ppellant's statements where the

---

[5] The charge of Attempted Murder was quashed before trial; the trial court eventually found Appellant not guilty of Neglect of Care of a Dependent Person after Appellant filed a Motion for Extraordinary Relief.

[6] Simple Assault and REAP merged with Aggravated Assault.

Commonwealth failed to establish that a crime occurred by a preponderance of the evidence, and the court further erred in considering the statements during deliberation of the verdict as the Commonwealth failed to prove that a crime had occurred beyond a reasonable doubt?

2. Was not the evidence insufficient to sustain [A]ppellant's convictions for [A]ggravated [A]ssault, [S]imple [A]ssault, [REAP], and [T]erroristic [T]hreats?

3. Did not the lower court abuse its discretion in finding that [A]ppellant's [P]rior [R]ecord [S]core at sentencing was a "5" when the evidence offered at sentencing by the Commonwealth was insufficient to support this conclusion?

4. Did not the lower court err as a matter of law, abuse its discretion, and violate [A]ppellant's constitutional rights to due process of law, where at sentencing, [A]ppellant received a sentence of 6 to 12 years and subsequently the lower court reconsidered the sentence and imposed a greater and vindictive sentence of 10 to 20 years even though the Commonwealth presented no additional relevant information?

5. Did not the lower court err and abuse its discretion when the court imposed a manifestly excessive and unreasonable sentence of 10 to 20 years?

Appellant's Brief at 4-5.

### *Corpus Delicti*

In his first issue, Appellant avers that the trial court erred in admitting his own extrajudicial statements made to Reid and Sergeant Butler at trial about disconnecting the electricity, which Appellant contends violated the *corpus delicti* rule with respect to all charges. Appellant's Brief at 23.

The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Tyson**, 119 A.3d 353, 357 (Pa.

Super. 2015) (citation and quotation omitted). "[A]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence or the record." *Commonwealth v. Cameron*, 780 A.2d 688, 692 (Pa. Super. 2001) (citation and quotation omitted).

"[I]n any criminal case, a conviction may not be based upon the extra-judicial confession [or statement] of the accused unless it is corroborated by independent evidence establishing the *corpus delicti*."[7] *Commonwealth v. Wood*, 833 A.2d 740, 748-49 (Pa. Super. 2003) (citations omitted). "This rule is rooted in the hesitancy to convict a person of a crime solely on the basis of that person's statements." *Commonwealth v. Cuevas*, 61 A.3d 292, 295 (Pa. Super. 2013) (citation omitted).

In Pennsylvania, "a confession [or extrajudicial statement] is not evidence in the absence of proof of the *corpus delicti*. . . . When the Commonwealth [proffers] sufficient evidence of the *corpus delicti* to entitle the case to go to the jury, it [may introduce] a confession [or extrajudicial statement] made by the prisoner connecting him with the crime." *Commonwealth v. Taylor*, 831 A.2d 587, 590 (Pa. 2003) (quoting *Gray v. Commonwealth*, 101 Pa. 380, 386 (Pa. 1882)). The rule is not limited to

---

[7] "'*Corpus delicti*' means, literally, 'the body of a crime.'" *Commonwealth v. Taylor*, 831 A.2d 587, 590 (Pa. 2003) (citing Black's Law Dictionary).

formal confessions; it extends to admissions and statements of the accused. *See Commonwealth v. Smallwood*, 442 A.2d 222, 225 (Pa. 1982) (discussing the admissibility of an inculpatory statement made to a treating nurse).

A trial court applies the *corpus delicti* rule in two phases: (1) "In the first phase, the court determines whether the Commonwealth has proven the *corpus delicti* of the crimes charged by a preponderance of the evidence. If so, the confession [or extrajudicial statement] of the defendant is admissible[;]" (2) "In the second phase, the rule requires that the Commonwealth prove the *corpus delicti* to the factfinder's satisfaction beyond a reasonable doubt before the factfinder is permitted to consider the confession [or extrajudicial statement] in assessing the defendant's innocence or guilt." *Commonwealth v. Reyes*, 870 A.2d 888, 894 n.4 (Pa. 2005) (citations omitted).

Here, the trial court properly admitted Appellant's inculpatory statements to Michelle Reid and Officer Butler. The Commonwealth offered eyewitness testimony that Appellant directed a PECO employee to shut off the electricity on which his mother depended for oxygen, notwithstanding Appellant's self-serving averments in his Brief to the contrary. Reid testified that she directly observed Appellant on the property with the PECO employee. Officer Butler testified that when he responded to the home, the electricity "was clearly turned off." N.T. Trial, 12/12/14, at 95. There was

substantial evidence of Appellant's motive and intent in so doing. Appellant also knew about his mother's dependence on the oxygen machine, which required electricity, given his conversations with Michelle Reid and his presence in his mother's room with the equipment.

Therefore, the *corpus delicti* of each crime was sufficiently proven and the court did not abuse its discretion in admitting Appellant's statements into evidence.[8] We thus conclude that the trial court did not act erroneously or abuse its discretion in considering Appellant's statements in reaching its verdict. The record supports the trial court's conclusions and we discern no abuse of discretion. Appellant's arguments to the contrary are unavailing and he is not entitled to relief.

**Sufficiency of the Evidence**

Appellant next challenges the sufficiency of the evidence supporting his convictions for Aggravated Assault, Simple Assault, REAP, and Terroristic Threats. We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable

---

[8] Pennsylvania has adopted the "closely related crimes" exception to the *corpus delicti* rule, which "provides that where a defendant's confession relates to separate crimes with which he is charged, and where independent evidence establishes the *corpus delicti* of only one of those crimes, the confession may be admissible as evidence of the commission of the other crimes." **Commonwealth v. Dupre**, 866 A.2d 1089, 1098-99 (Pa. Super. 2005).

the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Melvin***, 103 A.3d 1, 39 (Pa. Super. 2014). Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. ***Id***. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder. ***Id***. at 39-40.

"A person is guilty of [A]ggravated [A]ssault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). The Crimes Code defines "Serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

"A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S. § 302(b)(1)(i). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof." ***Commonwealth v. Matthews***, 870 A.2d 924, 929 (Pa. 2005) (citations omitted). "[I]ntent can be proven by direct or circumstantial evidence; it

may be inferred from acts or conduct or from the attendant circumstances."

***Id.***

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). For purposes of an Aggravated Assault charge, "an 'attempt' is found where an accused who possesses the required specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another. An intent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances." ***Commonwealth v. Fortune***, 68 A.3d 980, 984 (Pa. Super. 2013) (*en banc*) (internal citations omitted).

In Pennsylvania, a person is guilty of Simple Assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S. § 2701(a)(1). The Crimes Code defines "Bodily injury" as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

Regarding Appellant's Aggravated Assault and Simple Assault convictions, Appellant's sole argument in his Brief challenges the element of intent for each conviction. Appellant's Brief at 29-33. Thus, we limit our analysis to this element only and address Appellant's Aggravated Assault and Simple Assault convictions together. ***See*** Pa.R.A.P. 2119.

Appellant argues that his statements to Reid and Carter constituted "notice and put the onus upon others to find a place for his mother to go after the electricity was disconnected[,]" and "failed to establish the requisite criminal intent[.]" Appellant's Brief at 32. Viewing the evidence in the light most favorable to the Commonwealth, there was ample direct and circumstantial evidence of Appellant's criminal intent to support his convictions for Aggravated Assault and Simple Assault.

The Commonwealth demonstrated a troubling pattern of Appellant's verbal abuse and treatment of Carter, from the deplorable living conditions to Appellant's interference with others attempting to assist Carter, including Reid, his daughter, Carter's niece, Meals on Wheels, and even Sergeant Butler. Appellant's actions also increasingly isolated Carter from the outside world. The Commonwealth sufficiently proved that Appellant was aware that Carter required electricity for her oxygen machine because he had been present in Carter's bedroom while she was using the oxygen machine and because Reid directly informed him that she required it to breathe. Nonetheless, Appellant pushed ahead and directed the PECO employee to shut off the electricity to the entire house before he left.

Some of the most compelling evidence of Appellant's intent in this case came directly from Appellant himself while interacting with several eyewitnesses, including Reid and Sergeant Butler. The previous week before the shutoff, Appellant told Reid, "I don't know what y'all going to do with

her, but this electric is getting cut off. I'm tired of all these nurses running in and out of here, I'm going to put a stop to that." N.T. Trial, 12/12/14, at 71-73. Appellant also told Carter that he would shut off the electricity that morning, sending her into a panic that led her to call Reid on her day off for help since Carter could not leave the second floor to obtain assistance on her own. *Id.* at 25.

Once emergency personnel responded to the crisis Appellant had created at Carter's home, they attempted to contact Appellant to resolve the dangerous situation for Carter. Appellant hung up on Sergeant Butler at least once, and Appellant repeatedly stated that he did not want to speak with Sergeant Butler. N.T. Trial, 2/9/15, at 9-12, 35-36. Appellant would not state what arrangements he had made for his mother. Specifically, Appellant told Sergeant Butler that, "It's your problem." *Id.* at 11-12. Sergeant Butler clarified that Appellant referred to his mother as "it" during this phone conversation. *Id.*

Appellant's statements, which he argues served as "notice" of his actions to others, proved his actions were deliberate and it was his conscious object to bring about the result of depriving his mother of oxygen.[9] The trial

_____

[9] Insofar as Appellant seems to argue that providing notice of future criminal conduct negates the intent element of that crime if actually carried out, his argument is entirely unsupported in his Brief by relevant authorities and erroneous. In fact, Appellant's threats to carry out his criminal conduct in
*(Footnote Continued Next Page)*

court could properly infer Appellant's refusal to cooperate with police or return to the property, and his statements during the crisis indicated the requisite criminal intent to support the Aggravated Assault and Simple Assault convictions.

To the extent that Appellant suggests that his actions indicate callousness in pursuit of an "eviction" rather than criminal conduct, and the trial court should have credited this particular interpretation of the evidence, such an argument ignores our standard of review. We must view all of the evidence in the light most favorable to the Commonwealth as verdict winner and we may not reweigh the evidence and substitute our judgment for that of fact-finder. *See Melvin*, *supra* at 39-40.

Regarding Appellant's REAP conviction, Appellant argues that his conduct did not place Carter in actual danger of death or serious bodily injury because "she breathed on her own without the use of any oxygen for 45 minutes to an hour while [Reid] attempted to connect [Carter] to manual oxygen." Appellant's Brief at 34. While Appellant concedes that "Carter may have been afraid," he avers "she was not in [actual or immediate] danger." *Id.*

"A person commits [REAP,] a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in

*(Footnote Continued)* ————————————————

the future by shutting off the electricity served as the basis for his Terroristic Threats conviction, which clearly undermines Appellant's novel theory.

danger of death or serious bodily injury." 18 Pa.C.S. § 2705. "Reckless endangerment is a lesser included offense of [A]ggravated [A]ssault and where the evidence is sufficient to support a claim of [A]ggravated [A]ssault it is also sufficient to support a claim of [REAP]." ***Commonwealth v. Smith***, 956 A.2d 1029, 1036 (Pa. Super. 2008).

Since the Commonwealth presented sufficient evidence to support Appellant's Aggravated Assault conviction, the evidence also supported Appellant's REAP conviction as a matter of law because it is a lesser-included offense of Aggravated Assault. ***Smith***, 956 A.2d at 1036. Moreover, we conclude that depriving Carter of electricity and oxygen for at least 45 minutes placed Carter "in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. The trial court was free to infer, as it reasonably did, that Appellant deprived Carter of the oxygen she required, and Appellant's suggestion here that Carter did not require oxygen for her survival ignores our deferential standard of review. The fact that Carter did not immediately die does not entitle Appellant to any legal windfall, particularly where emergency medical responders, hospitalization, and other hospice services intervened as a result of Appellant's actions.

Regarding his Terroristic Threats conviction, Appellant argues that the evidence was insufficient to prove that he threatened a crime of violence or to prove his intent. Appellant's Brief at 35-37. "A person commits the crime of [T]erroristic [T]hreats if the person communicates, either directly or

indirectly, a threat to . . . commit any crime of violence with intent to terrorize another[.]"  18 Pa.C.S. § 2706(a)(1).  "[T]he term 'communicates' means conveys in person or by written or electronic means[.]"  18 Pa.C.S. § 2706(e).  "The harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security[.]"  *Commonwealth v. Martinez*, 153 A.3d 1025, 1029 (Pa. Super. 2016).

In the instant case, there was sufficient evidence to support Appellant's conviction for Terroristic Threats.  Aggravated Assault is a crime of violence.  Although the Terroristic Threats statute does not provide a definition of crime of violence, we are guided by case law interpreting that phrase in other contexts.  *See Commonwealth v. Ferrer*, 423 A.2d 423, 425 n. 3 (Pa. Super. 1980) (stating that while the definition of "crime of violence" in 18 Pa.C.S. § 6102, pertaining only to the Pennsylvania Uniform Firearms Act, was not applicable to the appellant's crime, it nevertheless provided "a useful guide by listing the crimes the legislature intended to include in the identical phrase used in an analogous context."); 42 Pa.C.S. § 9714(g) ("'crime of violence' [for purposes of Section 9714] means . . . aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) or (2) (relating to aggravated assault)"); *Commonwealth v. McClintic*, 909 A.2d 1241, 1243 n.2 (Pa. 2006) (same).  Thus, despite Appellant's protestations that shutting off electricity is not a crime of violence, as discussed above, the totality of

Appellant's actions under these particular circumstances constituted, *inter alia*, Aggravated Assault, a crime of violence intended to terrorize another. **See** 18 Pa.C.S. §§ 2702, 2706(a)(1).

Insofar as Appellant challenges the evidence of his intent, we incorporate our previous analysis of Appellant's intent. We repeat only that Appellant conveyed direct and indirect verbal communications to Carter that he would shut off the electricity on which she depended for oxygen. Carter's statements during her frantic phone call with Reid seeking help supported the inference that Appellant directly communicated his threats to shut off the electricity and deprive her of needed oxygen.

Viewing the totality of the evidence in the light most favorable to the Commonwealth as the verdict winner, it is clear that the Commonwealth proved each element of Aggravated Assault, Simple Assault, REAP, and Terroristic Threats. Appellant's sufficiency challenges, thus, fail.

**Discretionary Aspects of Sentencing Claims**

In challenging his sentence of ten to twenty years' incarceration, Appellant presents three claims: (1) the trial court miscalculated his Prior Record Score as a five; (2) the trial court vindictively increased his sentence; and (3) the trial court's sentence was excessive and unreasonable. Appellant's Brief at 4-5.

Initially, we note that Appellant's remaining three claims implicate the discretionary aspects of sentencing. **See Commonwealth v. Johnson**, 758

A.2d 1214, 1216 (Pa. Super. 2000) ("A challenge to the calculation of the Sentencing Guidelines raises a question of the discretionary aspects of a defendant's sentence."); *Commonwealth v. Robinson*, 931 A.2d 15, 20 (Pa. Super. 2007) (*en banc*) (holding that "a claim of vindictiveness is a waivable challenge to the discretionary aspects of the sentence"); and *Commonwealth v. Hornaman*, 920 A.2d 1282, 1283-84 (Pa. Super. 2007) (holding that a claim that trial court imposed excessive and unreasonable sentence implicated a discretionary aspect of sentence).

Challenges to the discretionary aspects of sentence are not appealable as of right. *Commonwealth v. Leatherby*, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by satisfying a four-part test: "(1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b)." *Id.* (citation omitted).

Here, Appellant complied with the first three requirements above. Next, we will determine whether Appellant has presented any substantial questions in his Pa.R.A.P. 2119(f) Statement. An appellant raises a

"substantial question" when he "sets forth a plausible argument that the sentence violates a provision of the [S]entencing [C]ode or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa. Super. 2010) (citation omitted).

Each of Appellant's claims raises a substantial question. *See Commonwealth v. Anderson,* 830 A.2d 1013, 1018 (Pa. Super. 2003) (holding that a claim that a trial court's improper consideration of a prior conviction, leading to an improper Prior Record Score, raises a substantial question); *Commonwealth v. Tapp*, 997 A.2d 1201, 1203 (Pa. Super. 2010) (holding that a claim of vindictiveness in sentencing raises a substantial question for our review); *Commonwealth v. Ferguson*, 893 A.2d 735, 737 (Pa. Super. 2006) (concluding that a claim that a sentence is manifestly excessive presents a "substantial question" for review); *Commonwealth v. Coulverson*, 34 A.3d 135, 143 (Pa. Super. 2011) (holding that defendant presented a substantial question where trial court extended sentence to statutory maximum and defendant suggested deviation from sentencing norms). Accordingly, we will examine most of Appellant's sentencing claims.[10]

_____

[10] An argument that the sentencing court failed to consider mitigating factors in favor of a lesser sentence does not present a substantial question appropriate for our review. *Commonwealth v. Hanson*, 856 A.2d 1254, 1257-58 (Pa. Super. 2004). *See also Commonwealth v. Griffin*, 804 A.2d 1, 9 (Pa. Super. 2002) (citing *Commonwealth v. Williams*, 562 A.2d
*(Footnote Continued Next Page)*

Our well-settled standard of review concerning the discretionary aspects of sentencing is as follows: "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." **Anderson**, **supra** at 1018. "In this context, an abuse of discretion is not shown merely by an error in judgment." **Id.** "Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." **Id.**

### Prior Record Score Calculation

Appellant first claims that the trial court miscalculated his Prior Record Score because a certified record showing Appellant's 1984 New Jersey conviction did not specify that he was convicted of Sexual Assault. Appellant's Brief at 37-38.

In determining the guideline sentence for a criminal conviction, the trial court must establish the defendant's Prior Record Score. 204 Pa. Code § 303.2(a)(2). The Prior Record Score "is based on the type and number of prior convictions (§ 303.5) and prior juvenile adjudications (§ 303.6)." 204

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

1385, 1388 (Pa. Super. 1989) (*en banc*) (concluding that an allegation that the sentencing court did not adequately consider various factors is, in effect, a request that this court substitute its judgment for that of the lower court in fashioning a defendant's sentence)). To the extent Appellant claims the trial court failed to consider various mitigating factors, we will not consider these arguments.

Pa. Code § 303.4(a). A prior conviction from another state court, federal court, or foreign jurisdiction "is scored as a conviction for the current equivalent Pennsylvania offense." 204 Pa. Code § 303.8(f)(1). If there is no current Pennsylvania equivalent, the trial court must base the grading of the crime on the maximum sentence allowed; if the grade of the prior felony conviction is unknown, it must be treated as an F3. 204 Pa. Code §§ 303.8(d)(2), (f)(3).

At the sentencing proceeding, "the defense has the burden of alleging invalid prior convictions, and [] if the allegations appear to have merit, the court ordinarily should inquire into the circumstances surrounding the convictions." **Commonwealth v. Charles**, 488 A.2d 1126, 1132 (Pa. Super. 1985). "If the allegations warrant it, the court should require the production of evidence by the Commonwealth showing the validity of the convictions." **Id.** "If the defendant fails to prove to the satisfaction of the court that the inference of constitutional adjudications is wrong, the court may infer that a presentence report showing convictions is accurate, and proceed on that basis." **Id.**

In the instant case, the court computed Appellant's Prior Record Score as five, which consisted of one point for three misdemeanor convictions, and four points for his New Jersey conviction for Sexual Assault. N.T. Sentencing, 8/7/15, at 19, 23. In so doing, the trial court relied on a Presentence Report prepared by Presentence Investigator James Mack, Jr.

and Presentence Supervisor Kelly O'Neill, which provided details about each of the prior convictions, including docket numbers, the particulars of each sentence and violation, and other relevant information. The Presentence Report included a list of sources relied upon in preparing the report, including, *inter alia*, "The National Crime Information Center Database (NCIC)" and "Atlantic County, New Jersey Superior Court." Separately, the Commonwealth presented to the court at sentencing a certified copy of Appellant's 1984 Sexual Assault conviction from the Superior Court of New Jersey, which described Appellant's prior conviction as "Count 4" but did not indicate the type of crime or the law violated. *See* Trial Court Opinion, dated 6/20/16, at 18.[11]

Appellant argued at sentencing that his Prior Record Score should be two rather than five because the Commonwealth's supporting documentation failed to prove that he had been convicted of Sexual Assault and, therefore, the court should have given only one point for the New Jersey conviction. N.T. Sentencing, 8/7/15, at 20.

---

[11] We note that the Commonwealth's certified copy of the New Jersey docket is not included in the certified record on appeal. We rely on the trial court's Opinion, which stated the relevant facts of record, rather than the copy of this record appended to Appellant's Brief. *Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa. Super. 2006) (holding "any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief").

The trial court concluded that the Presentence Investigation Report and the Prior Record Score Calculation Report adequately explained Appellant's prior Sexual Assault conviction, and thus calculated his Prior Record Score as a five. N.T. Sentencing, 8/7/15, at 23. The trial court reasoned that, although the certified copy of the New Jersey Sexual Assault conviction was "admittedly sparse in detail . . . the PSI also contained several key details pertaining to the conviction that were not in the certified conviction copy[.]" Trial Court Opinion, dated 6/20/16, at 19.

We agree with the trial court's analysis. The trial court appropriately considered and weighed the supporting evidence, including the numerous sources the investigators cited in the Presentence Investigation Report. Moreover, the trial court appropriately considered and weighed the certified copy of Appellant's Sexual Assault conviction from the New Jersey Superior Court. Appellant's argument to the sentencing court utterly failed to meet his burden, when faced with supporting evidence of a prior conviction, "to prove to the satisfaction of the court that the inference of constitutional adjudications is wrong." **Charles**, **supra** at 1132.

In light of the foregoing, we conclude that the trial court did not err or otherwise abuse its discretion in relying on the PSI report, including the Prior Record Score therein. Appellant's challenge has no merit and, therefore, fails.

## Reconsideration of Sentence

Appellant next claims that, after he and the Commonwealth filed Motions to reconsider his sentence, the trial court vindictively increased his sentence from 6 to 12 years' incarceration to 10 to 20 years' incarceration, the statutory maximum sentence for Aggravated Assault. Appellant's Brief at 42-45. Appellant avers that the Commonwealth presented minimal new information at the resentencing hearing, thus the increase triggered the "presumption of vindictiveness." *Id.* at 45-46 (citing *North Carolina v. Pearce*, 395 U.S. 711 (1969), and its progeny defining the presumption of vindictiveness). Appellant contends that he is entitled to a new sentencing hearing. *Id.* at 47.

The trial court, as a matter of law, has discretion to modify its own sentence in response to a Commonwealth Motion for Reconsideration of Sentence. *Commonwealth v. Robinson*, 931 A.2d 15, 24 (Pa. Super. 2007) (*en banc*). However, any increase in sentence cannot be the result of judicial vindictiveness. *Commonwealth v. Greer*, 554 A.2d 980, 987 n. 7 (Pa. Super. 1989) (applying *North Carolina v. Pearce*, 395 U.S. 711 (1969)).[12] "In the absence of a presumption of vindictiveness, the

---

[12] We note that *North Carolina v. Pearce*, 395 U.S. 711 (1969), and its related Pennsylvania case law regarding the presumption of judicial vindictiveness are not directly applicable in this case. In *Pearce*, the United States Supreme Court established a presumption, subject to a variety of exceptions, that an increase in sentence upon re-sentencing reflects an

*(Footnote Continued Next Page)*

defendant must affirmatively prove actual vindictiveness." *See Tapp*, 997 A.2d at 1205 (citations and quotation marks omitted).

In the instant case, both Appellant and the Commonwealth filed a Motion for Reconsideration. Thus, we may not apply the presumption of vindictiveness. *Robinson*, *supra* at 24. Appellant failed to offer any affirmative evidence in the lower court demonstrating that the basis for his increased sentence was personal or motivated by the trial court's vindictiveness toward Appellant based on his decision to file a Motion to Reconsider. Since Appellant has failed to adduce any evidence on this issue, his claim must necessarily fail.

Moreover, even if we were bound to apply the presumption of vindictiveness, the trial court plainly stated its reasons for increasing Appellant's sentence on the record and repeated those reasons in its Pa.R.A.P. 1925(a) Opinion. *See* N.T. Sentencing, 8/19/15, at 17; Trial Court Opinion, dated 6/20/16, at 21-23 (citing, *inter alia*, the victim's age and

*(Footnote Continued)* _____

improper motive on the part of the sentencing court. *See id.* at 725. In subsequent decisions, the U.S. Supreme Court recognized that *Pearce* applied a "presumption of vindictiveness," which may be overcome only by objective information in the record justifying the increased sentence. *See Alabama v. Smith*, 490 U.S. 794, 798-99 (1989); *see also Commonwealth v. Hernandez*, 783 A.2d 784, 787 (Pa. Super. 2001). Here, Appellant's increased sentence was based on the Commonwealth's Motion for Modification of Sentence, where no presumption of vindictiveness applies. *Commonwealth v. Robinson*, 931 A.2d 15, 24 (Pa. Super. 2007) (*en banc*) (refusing to apply presumption of vindictiveness "[g]iven that the trial court has the discretion to modify its own sentence in response to a Commonwealth [M]otion for [R]econsideration").

vulnerability, Appellant's orders preventing relatives from helping the victim in any way, recordings of Appellant's prison phone calls, Appellant's danger to society, Appellant's lack of remorse, and the egregious nature of the crimes). Appellant's claim would also fail based on this "objective information" in the record justifying the increased sentence. **Hernandez**, **supra**.

## Excessive Sentence

Appellant claims that his sentence of 10 to 20 years' incarceration for his Aggravated Assault conviction followed by 5 years' probation for his Terroristic Threats conviction constituted an unreasonable and manifestly excessive sentence because the trial court deviated above the guideline sentencing recommendation of 60 to 72 months, and above the aggravated sentencing recommendation of up to 84 months. Appellant's Brief at 47-50. **See** 204 Pa. Code § 303.16(a) (entitled "Basic Sentencing Matrix").

Our standard of review in assessing whether a trial court has erred in fashioning a sentence is well settled. "[T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion." **Commonwealth v. Provenzano**, 50 A.3d 148, 154 (Pa. Super. 2012) (quoting **Commonwealth v. Walls**, 926 A.2d 957, 961 (Pa. 2007)). "[A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly

unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Id.* "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.*

Where the trial court deviates above the guidelines, this Court may only vacate and remand a case for resentencing if we first conclude that "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S. § 9781(c)(3). Although the Sentencing Code does not define the term "unreasonable," our Supreme Court has made clear that "rejection of a sentencing court's imposition of sentence on unreasonableness grounds [should] occur infrequently, whether the sentence is above or below the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review." *Commonwealth v. Walls*, 926 A.2d 957, 964 (Pa. 2007). *See Commonwealth v. Rossetti*, 863 A.2d 1185, 1194-95 (Pa. Super. 2004) (affirming a statutory maximum sentence imposed after the trial court considered and balanced all of the relevant mitigating and aggravating facts).

42 Pa.C.S. § 9721(b) provides that, in imposing sentence, "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity

of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). When imposing a sentence, the sentencing court must consider the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing and "shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Id.*

The court "is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b)[,] [h]owever, the record as a whole must reflect due consideration by the court of the statutory considerations" at the time of sentencing. *Commonwealth v. Coulverson*, 34 A.3d 135, 145 (Pa. Super. 2011) (citations omitted). A sentencing court's indication that it has reviewed a presentence report can satisfy the requirement of placing reasons for imposing the sentence on the record. *Commonwealth v. Burns*, 765 A.2d 1144 (Pa. Super. 2000).

In addition, "[o]ur Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citation omitted).

In the instant case, the trial court reviewed a Presentence Investigation Report and the Prior Record Score Calculation Report before imposing the sentence. Thus, we presume that the trial court was aware of all appropriate sentencing factors and considerations at the time of sentencing. The trial court relied on several persuasive factors when deciding to deviate from even the aggravated sentencing recommendation, including: (1) its determination that Appellant was a danger to society; (2) Appellant's lack of remorse, including during his allocution, which the trial court concluded "can indicate lack of social conscience and scant likelihood of rehabilitation[;]" (3) the egregious and heinous nature of Appellant's conduct, *i.e.*, the gravity of the offense; (4) the victim's age and vulnerability; (5) the victim's quality of life before and after Appellant's crimes; (6) Appellant's explicit instructions to his children not to help the victim; (7) the need to protect the public; and (8) Appellant's "long-running pattern of mistreatment toward the victim culminating in the power shutoff" and his terrorizing the victim. **See** Trial Court Opinion, dated 6/20/16, at 21-23; N.T. Sentencing, 8/7/15, at 23-34; N.T. Sentencing, 8/19/15, at 17-19.

After careful review of Appellant's arguments and the certified record, we conclude that the trial court did not ignore or misapply the law, and did not exercise its judgment for reasons of partiality, prejudice, bias or ill will, or arrive at a manifestly unreasonable decision. **See Rossetti**, **supra** at

1194-95. Accordingly, the trial court did not abuse its discretion in imposing Appellant's aggregate sentence of 10 to 20 years' incarceration followed by 5 years' probation.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/31/2017