J-S05031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOYCE BROWN-RODRIGUEZ | : | |
| | : | |
| Appellant | : | No. 1705 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 14, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002606-2022

BEFORE: BOWES, J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.: **FILED FEBRUARY 18, 2025**

Appellant, Joyce Brown-Rodriguez, appeals *nunc pro tunc* from the judgment of sentence entered in the Court of Common Pleas of Bucks County following her guilty plea to the charges of third-degree murder, 18 Pa.C.S.A. § 2502(c), and conspiracy, 18 Pa.C.S.A. § 903.[1] After a careful review, we affirm.

The relevant facts and procedural history are as follows: On July 14, 2022, the Commonwealth filed an Information charging Appellant with various crimes in connection with the shooting death of Christopher Wilson. On December 21, 2022, Appellant, represented by counsel, entered a negotiated

---

* Former Justice specially assigned to the Superior Court.

[1] As discussed *infra*, Appellant's direct appeal rights were reinstated via the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.

open guilty plea to third-degree murder and conspiracy. As the trial court indicated during the guilty plea hearing, "there is an agreement that essentially this is an open case, but you would be permitted to argue for a sentence less than the maximum[.]" N.T., 12/21/22, at 6.

During the guilty plea hearing, Appellant admitted to the following facts underlying the charges:

> On December 10th of 2020, Christopher Wilson was shot and murdered by [Appellant's] son, Kahlill Brown,[2] in the parking lot of Mr. Wilson's employer, Kuusakoski, Inc., located in Middletown Township, Bucks County. The day before Mr. Wilson's murder, [Appellant] advised her son that [Mr. Wilson] had been requesting money from her to keep [her] and Mr. Wilson's relationship a secret.

> [Appellant], at the time she told her son this, was angry at Mr. Wilson. She advised police that her son, Kahlill Brown, told her that he wanted to talk to Mr. Wilson. [Appellant] knew this to mean that her son was going to engage in physical violence towards Mr. Wilson.

> Knowing this, [Appellant] agreed to drive Kahlill Brown to the parking lot of Kuusakoski, Inc., the morning of December 10th. [Appellant was present and observed the shooting from her car.] [A]fter the shooting,…she drove Kahlill Brown away from the scene.

**Id.** at 8-9 (footnote added).

The trial court deferred sentencing, and on August 14, 2023, Appellant proceeded to a sentencing hearing at which numerous people offered victim impact statements. Specifically, Angela Coaxum testified that Mr. Wilson was

---

[2] In July of 2023, Kahlill Brown proceeded to a jury trial, at the conclusion of which he was convicted of, *inter alia*, first-degree murder. He was sentenced to life in prison without the possibility of parole. As further discussed *infra*, Appellant testified against her son, Kahlill Brown.

her father. N.T., 8/14/23, at 5. She testified she and Mr. Wilson were close, and he sent her texts every day. *Id.*

Chynea Wilson testified Mr. Wilson was her father. She indicated Appellant lived next to her grandparents for many years, and Appellant "pretended like she cared about [her] family." *Id.* at 6. Ms. Wilson testified she saw Appellant on the day of the shooting, and Appellant "pretended that she cared." *Id.* Ms. Wilson testified Appellant had her father killed for selfish reasons without regard to how it would affect his family. *Id.* at 7.

Armani Wilson Coaxum testified Mr. Wilson was her father. She indicated that "it has been extremely difficult for me to put into words on how this has impacted me." *Id.* at 8. She indicated she was close to her father, and he texted her every day. *Id.* She testified that, after her father's death, Appellant was deceitful in acting like she did not know who killed him and attempting to comfort the family. *Id.* at 9.

Britney Wilson testified Mr. Wilson was her father, and he was a "hardworking, loving, devoted man." *Id.* at 13. She indicated Appellant was the "mastermind" of the murder. *Id.* at 10. She testified she was "crushed" when she heard her father had been murdered. *Id.* She indicated she has been in "a deep depression" since her father's death, and she has had thoughts of suicide. *Id.* at 12. She testified Appellant's actions "messed up the family" and took away the one man who loved her unconditionally. *Id.* She testified that "what hurts the most is that [Appellant] was somebody we trusted [and] somebody we considered family." *Id.* She testified to

Appellant's deceit after the murder, including "hugging us the very next day after she had [our] father killed as if she had nothing to do with it[.]" *Id.*

Talia Wilson testified Mr. Wilson was her father. She testified she misses him "tremendously," and he was the "glue" in the family. *Id.* at 14. She testified she has been "heartbroken" over her father's death. *Id.* at 15. She indicated Mr. Wilson was a hardworking man who spoiled his family with love. *Id.*

At this point, defense counsel reminded the trial court that Appellant testified "against her son, which led to his conviction." *Id.* at 16. Defense counsel noted that, after the murder, Appellant tried to commit suicide because she felt remorse for her participation in the murder. *Id.* He indicated she still "suffers" with this remorse and with mental health issues. *Id.* at 17.

Defense counsel indicated that Appellant "made it right relative to the other defendant" by testifying against him. *Id.* Defense counsel suggested "the most important thing for [the trial court] to consider as it relates to this sentence" is the fact Appellant offered credible testimony against her son, who was her co-conspirator. *Id.* Defense counsel noted that, during the time Appellant has been in jail awaiting sentencing, she has been "misconduct free," and she's a "block runner in the jail." *Id.*

Appellant declined to make a statement. The trial court indicated the following:

> I suspect that the family of the deceased and I have some of the same thoughts as it pertains to you, ma'am. Really, I'm sure they, like me, go, Why? What was the thought process? What caused you and your son to take the life of Mr. Wilson?

Having heard the testimony at [your son's] trial, and your testimony certainly, I just—it makes no sense. It makes no sense that anything that occurred here in any way should have led to the taking of the life of Mr. Wilson. I don't know. I mean, it almost seems to me that it was like a relationship that ended poorly, and because of that you and your son took his life. Why, as somebody else asked, you couldn't just leave him alone? I don't understand that.

Look, you entered into the deal. You entered into this plea to a third-degree murder and conspiracy to commit that murder. [W]hile it's clear from the testimony that you were not the person who pulled the trigger here, you and your son callously murdered Christopher Wilson.

All right. On Count 2[3] of the Bill of Information, it's ordered and directed that you undergo imprisonment in a state correctional institution for a period of not less than 20 nor more than 40 years.

\*\*\*

In imposing this sentence, I take into consideration your cooperation and your testimony at [your son's] trial. I take into consideration the total lack of any reasonable thought process that could have gone into this action, any rationalization.

Certainly, I could have imposed two separate sentences, both for the conspiracy and the murder itself. And I considered that and have decided not to impose a consecutive sentence for the conspiracy.

Your actions not only took the life of Mr. Wilson but had a significant harm on the people that were there on the date of this incident, those that were exposed, including those to whom, well, were subject to the random gunfire and could have been harmed. [T]hey had to witness the gunning down of another individual and the harm that causes to those who observed that action.

So, the harm was not only to Mr. Wilson and to his lovely family but to other persons who witnessed it, responded to it, and had to deal with it, and the trauma inflicted upon them.

_____

[3] As indicated *infra*, the trial court clarified it imposed 20 years to 40 years in prison on Count 1, third-degree murder.

> Obviously, the rules and regulations of the state parole department will be imposed. And as stated, no further penalty is on Count 2.
>
> [DEFENSE COUNSEL]: Judge, originally you had the sentence on Count 2. And then you just ended with no further penalty on Count 2.
>
> THE COURT: I'm sorry….My intention was to impose [20 years to 40 years] for the murder itself on Count 1, with no further penalty on Count 2.

*Id.* at 19-21 (footnote added).

Accordingly, the trial court sentenced Appellant to twenty years to forty years in prison for third-degree murder and imposed no further penalty for conspiracy.

On August 21, 2023, Appellant filed a timely counseled motion for reconsideration of her sentence, and she requested a hearing to present mitigating evidence pertaining to her family. On September 27, 2023, Appellant proceeded to a post-sentence hearing at which she testified she has four children, as well as one grandchild. N.T., 8/21/23, at 3-4. Appellant testified she helped to raise her young grandchild, who lived with her until she was incarcerated. *Id.* at 4. Appellant testified she misses her grandchild very much. *Id.* at 5.

Detective Eric Landamia confirmed Appellant testified on behalf of the Commonwealth at her son's criminal trial. *Id.* at 7. He indicated that he had several meetings with Appellant before she testified, and her testimony largely comported with what Appellant told the police in the meetings. *Id.*

At the conclusion of the hearing, the trial court relevantly indicated the following:

> At the time I imposed sentence, I think I stated the basis for the sentence. I took into consideration the fact that [Appellant] testified, and, in particular, she testified against her son. And I gave that a great deal of weight.
>
> I also took into consideration the fact that her plea was that of murder of the third degree. I mention that because but for her cooperation, her agreement to testify [against her son,] that it would have gone to trial in which she, as a co-conspirator, stood the chance of being convicted of first-degree murder, as was her co-defendant, which would have mandated a sentence of life without parole as a minimum.
>
> I have no reasons to reconsider the sentence that was imposed[.]

*Id.* at 8-9.

Accordingly, the trial court denied Appellant's post-sentence motion. Appellant filed a timely counseled notice of appeal to this Court; however, on March 8, 2024, this Court dismissed Appellant's appeal due to counsel's failure to file a brief.

With the assistance of new counsel, Appellant filed a timely PCRA petition seeking the reinstatement of her direct appeal rights *nunc pro tunc*. The Commonwealth did not oppose the petition. By order entered on May 3, 2024, the PCRA court granted Appellant PCRA relief and reinstated Appellant's direct appeal rights *nunc pro tunc*. The PCRA court specifically indicated: "The Defendant has 30 days upon receipt of transcripts to file an Appeal to the Superior Court in this matter." PCRA Court Order, filed 5/3/24, at 1.

On May 14, 2024, Appellant received the notes of testimony, and on June 12, 2024, Appellant filed a counseled appeal to this Court.[4] All Pa.R.A.P. 1925 requirements have been met. On appeal, Appellant sets forth the following issue in her "Statement of the Questions Involved" (verbatim):

Did the trial court abuse its discretion in sentencing the Defendant to not less than 20 to not more than 40 years, by failing to consider the mitigation of the Defendant, failing to consider the trial testimony of the Defendant, and failing to consider her lack of a criminal record, her family, and other mitigating evidence?

Appellant's Brief at V (suggested answer omitted).

Initially, we must determine whether the instant appeal is timely. *See Commonwealth v. Wooden*, 215 A.3d 997, 999 (Pa.Super. 2019) (noting the timeliness of a notice of appeal implicates this Court's jurisdiction). This Court has held that an appellant must file an appeal *nunc pro tunc* within thirty days of the order reinstating his or her appellate rights. *See Commonwealth v. Wright*, 846 A.2d 730 (Pa.Super. 2004). Here, the PCRA court entered its order reinstating Appellant's direct appeal rights on May 3, 2024, and the order was served on Appellant on May 9, 2024. However, Appellant did not file her notice of appeal until June 12, 2024, which is beyond the applicable thirty-day period.

_____

[4] We note this Court issued a rule to show cause as to why the instant appeal should not be dismissed as untimely, and Appellant filed a response emphasizing the PCRA court gave her thirty days to appeal from the time she received the transcripts. Appellant averred she received the transcripts on May 14, 2024.

- 8 -

However, we decline to quash Appellant's appeal on this basis. This Court will overlook an untimely appeal where there has been a breakdown in the court below. *See Wright*, *supra* (declining to quash an untimely appeal where the PCRA court failed to inform the appellant he had thirty days to file the appeal *nunc pro tunc*). In the case *sub judice*, in its PCRA order, the PCRA court specifically provided: "The Defendant has 30 days upon receipt of transcripts to file an Appeal to the Superior Court in this matter." PCRA Court Order, filed 5/3/24, at 1. Appellant received the notes of testimony on May 14, 2024, and she filed her appeal on June 12, 2024. Accordingly, on this basis, we decline to quash the instant appeal.

Turning to the issue presented on appeal, Appellant avers the trial court imposed an excessive sentence by failing to consider the mitigating evidence, including the fact she testified against her son, her lack of a prior criminal record, and her love for her family. She further avers the trial court failed to place any meaningful explanation on the record for her sentence.

Appellant's issue challenges the discretionary aspects of her sentence. *See Commonwealth v. Bullock*, 170 A.3d 1109 (Pa.Super. 2017). "[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa.Super. 2016) (citation omitted). Rather, before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether [the] [a]ppellant preserved [her] issues; (3) whether [the] [a]ppellant's brief

includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa.Super. 2011) (citation omitted). Here, assuming, *arguendo*, all of these requirements have been met, we conclude Appellant's sentencing claim is meritless.

Our standard of review concerning the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hyland*, 875 A.2d 1175, 1184 (Pa.Super. 2005).

42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's sentencing determination:

> [T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b).

Furthermore,

> Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable"

based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable." 42 Pa.C.S.A. § 9781(c). Under 42 Pa.C.S.A. § 9781(d), the appellate courts must review the record and consider the nature and circumstances of the offense, the sentencing court's observations of the defendant, the findings that formed the basis of the sentence, and the sentencing guidelines. The weighing of factors under 42 Pa.C.S.A. § 9721(b) is exclusively for the sentencing court, and an appellate court may not substitute its own weighing of those factors. The primary consideration, therefore, is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable for sentences falling outside the guidelines, or clearly unreasonable for sentences falling within the guidelines, pursuant to 42 Pa.C.S.A. § 9781(c).

*Commonwealth v. Bricker*, 41 A.3d 872, 875-76 (Pa.Super. 2012) (citations omitted).

When imposing a sentence, the sentencing court must consider the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing and "shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Bullock*, 170 A.3d at 1126 (citation omitted). The court "is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b)[;] [h]owever, the record as a whole must reflect due consideration by the court of the statutory considerations" at the time of sentencing. *Commonwealth v. Coulverson*, 34 A.3d 135, 145 (Pa.Super. 2011) (citations omitted).

Here, during sentencing, in open court, the trial court stated its reasons on the record for the sentence it imposed. Specifically, the trial court's statement reveals it considered all factors under Section 9721(b). For

- 11 -

example, the trial court indicated the need to protect the public from Appellant, who aided her son in committing a murder lacking "any reasonable thought process…any rationalization." N.T., 8/14/23, at 19.

Further, the trial court indicated it considered the gravity of the offense as related to the victim's family and the community. In this vein, the trial court noted the murder occurred in a parking lot where people could have been harmed by the gunfire. *Id.* at 20. The trial court noted the people who witnessed the murder will need to live with these images. *Id.* Moreover, taking into account the victim impact statements, the trial court noted the murder affected not only the victim but his family as well. *Id.*

Additionally, the trial court noted it considered the rehabilitative needs of Appellant, and to this end, the trial court did not impose a separate penalty for the crime of conspiracy. *Id.* at 19. Contrary to Appellant's assertion, the record reveals the trial court gave due consideration to the statutory considerations at the time of sentencing. *See Coulverson*, *supra*.

Additionally, it bears mentioning that, in its Opinion, the trial court further explained the following:

> The decision to impose a sentence of 20 to 40 years of incarceration [for third-degree murder with no further penalty for conspiracy] was in the sound discretion of the [trial] court. In fashioning Appellant's sentence, the [trial] court took into account numerous factors specific to this case. The [trial] court ultimately determined a sentence in the standard range was warranted.
>
> First, the [trial] court emphasized the callous and nonsensical nature of Appellant's crime: "[I]t makes no sense that anything that occurred here in any way should have led to the taking of the life of Mr. Wilson…[I]t almost seems to [the court]

- 12 -

that it was like a relationship that ended poorly, and because of that you and your son took his life." N.T., 8/14/23, at 18.

Next, the [trial] court stressed the impact of Appellant's actions on the community and on the victim's family:

> Your actions not only took the life of Mr. Wilson but had a significant harm on the people that were there on the date of this incident, those that were exposed, including those to whom, well, were subject to the random gunfire and could have been harmed…and the harm that causes to those who observed that action.
>
> So, the harm was not only to Mr. Wilson and to his lovely family but to other persons who witnessed it, responded to it, and had to deal with it, and the trauma inflicted upon them.

*Id.* at 19-20.

Finally, the [trial] court clearly articulated its consideration of Appellant's mitigating evidence. Specifically, the [trial] court gave a great deal of weight to Appellant's cooperation with the Commonwealth, her testimony at her son's trial, and the circumstances of the case, namely, the fact that her son was the one who pulled the trigger of the gun that killed the victim. *Id.*

At the hearing on Appellant's Motion for Reconsideration, the [trial] court reiterated Appellant's mitigating factors it took into consideration:

> I took into consideration the fact that [Appellant] testified, and in particular, testified against her son. And I gave that a great deal of weight.
>
> I also took into consideration the fact that her plea was that of murder of the third degree. I mention that because but for her cooperation, her agreement to testify, that it would have gone to trial in which she, as a co-conspirator, stood the chance of being convicted of first-degree murder….

N.T., 9/27/23 at 8.

In addition to the [trial] court's explicit statement on the record that it allotted a great deal of weight to Appellant's mitigating factors, this fact is further evidenced by the [trial] court's structuring of Appellant's sentence. The court noted on the record [during Appellant's sentencing hearing] that it "could

- 13 -

have imposed two separate sentences, both for the conspiracy and the murder itself. And [the trial court] considered that and decided not to impose a consecutive sentence for the conspiracy." N.T., 8/14/23, at 18-20. The [trial] court directed that no further penalty shall be imposed for the count of conspiracy.

Accordingly, the [trial] court properly considered all evidence and factors in sentencing Appellant, including the mitigating circumstances, and clearly acknowledged on the record the [trial] court's reasoning for imposing the sentence. Therefore, the [trial] court [concludes] it did not abuse its discretion in sentencing Appellant and avers that Appellant's assertions to the contrary are wholly without merit.

Trial Court Opinion, filed 7/30/24, at 5-7.

We agree with the trial court's sound reasoning. The record reveals the trial court gave due consideration to the statutory considerations and disclosed in open court the reasons for its sentence. *See Bullock*, *supra*. The trial court imposed an individualized sentence consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of Appellant. 42 Pa.C.S.A. § 9721(b). Finally, the trial court considered the mitigating circumstances. The fact Appellant wishes the trial court would have weighed the factors differently does not entitle her to relief.

For all of the foregoing reasons, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/18/2025