J-S74043-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAMUEL GARCIA | : | |
| | : | |
| Appellant | : | No. 2271 EDA 2017 |

Appeal from the Judgment of Sentence Entered March 2, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0014282-2014

BEFORE: LAZARUS, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED MARCH 21, 2019**

Samuel Garcia appeals from his judgment of sentence imposed on his convictions for attempted murder, aggravated assault, possession of an instrument of crime ("PIC"), simple assault, and recklessly endangering another person ("REAP").[1] Garcia challenges the discretionary aspects of his sentence and maintains that the trial court erred in denying his Pa.R.Crim.P. 600 motion. We affirm.

The trial court aptly summarized the facts of this case as follows:

On October 9, 2014, at approximately 10:00 p.m., police officers responded to a call of a person screaming at the intersection of Arch Street and Farson Street in the City and County of Philadelphia. The arriving officers observed a silver Dodge Caliber and a male pointing towards the car. Upon approaching the car, officers saw blood on the driver's side of the vehicle and an additional pool of blood on the sidewalk with what appeared to be human teeth. Officer Michael Fischbach, one of the first officers on

_____

[1] 18 Pa.C.S.A. §§ 901, 2502, 2702(a)(1), 907, 2701, and 2705, respectively.

the scene, approached the vehicle and observed the victim – later identified as V.B. – sitting in the driver's seat of the vehicle and observed she had cuts, a swollen face and lacerations to her face, arms and hands. The officers on scene noted that V.B. did not appear completely cognizant, but [they] were able to gather information that the persons responsible for her attack lived with her. The officers recognized the one to two-inch slash marks on V.B. to be consistent with those inflicted by a knife. After getting the summary information from V.B.[,] the officers on scene called for an expedited response by paramedics, [and] the officers observed a knife in the interior of the Dodge Caliber.

V.B. knew Samuel Garcia from a restaurant both mutually frequented. After some time, V.B. rented space in her home located at 5522 Ridgewood Street in Southwest Philadelphia to [Garcia]. [Garcia] consistently paid his rent on time for approximately 8 or 9 months while living with the victim; the only major point of contention between the two was [Garcia] would eat food purchased by V.B. and his failure to pay her back for the food.

On October 9, 2014, the victim – V.B. – asked that [Garcia] move out of the home in which he had been renting space from V.B. for 8 or 9 months. The victim wished for [Garcia] to move out due to the slovenly nature with which he kept space and for the continual taking of the victim's food without permission. After the victim asked [Garcia] to move out of the home and to pay for the food he had taken, [Garcia] asked V.B. for a ride to his aunt's house under the guise of collecting money from his aunt to give to the victim. The victim agreed to drive [Garcia] to his aunt's house. At this time, the victim entered the driver's seat of her vehicle, [Garcia] entered the front passenger seat of the vehicle and a second male entered the rear passenger seat of the vehicle. The three departed in the victim's car and upon arriving at the home of [Garcia's] aunt, they discovered that she was not home. [Garcia] then attempted to have V.B. drive to another location, but the victim refused. At that point, the male that was sitting in the backseat of the vehicle attempted to place something over the victim's head while she was sitting in the driver's seat. At the same time, [Garcia] took out a knife and began to stab at the victim. After repeatedly attempting to stab the victim with the knife, it broke in [Garcia's] hand. This broken knife blade and handle were observed by responding officers on the passenger side of the vehicle where [Garcia] had been seated. V.B. used this

opportunity to attempt to make an escape from the vehicle, but [Garcia] continued to beat the victim inside the car. Through the beating, the victim was able to open the driver's door of the vehicle at which time she fell out of the car and onto the ground.

Officers from the Special Investigations Unit, Southwest Detectives, of the Philadelphia Police Department recovered video of the events that unfolded outside of the vehicle from a grocery store located at 50th Street and Arch Street. The video depicts [Garcia] and the other male exit the vehicle[,] then kick the victim on or about the head approximately 25-30 times. The resulting beating left a pool of blood near the vehicle with human teeth. The victim was transported by ambulance to the Hospital of the University of Pennsylvania. At the hospital, V.B. was treated for bleeding on the brain, right medial orbital wall fracture - a fracture to the bone in her face – and was also found to have swelling in around the eye; fractured tooth root, multiple knife lacerations, multiple absent teeth and a collection of blood resulting from the lacerations. Detective Connell attempted to make contact with the victim at the hospital for an interview, but due to her condition was unable to take such an interview. Detective Connell was able to meet with V.B. at Southwest Detectives on October 17, 2014, at which time the victim identified [Garcia] as one of her attackers and the man who slashed at her in the vehicle prior to the knife breaking.

Trial Court 1925(a) Opinion ("TCO"), filed Feb. 27, 2018, at 1-5 (citations to record omitted).

The Commonwealth filed a criminal complaint against Garcia on October 22, 2014. *See* Criminal Complaint, filed 10/22/14. Trial was scheduled for May 16, 2016. A week prior to trial the Commonwealth discovered that V.B. no longer resided in Philadelphia and had relocated to Savannah, Georgia but was unaware of her exact address. Upon notification of this, the Commonwealth

filed a motion arguing that V.B. was unavailable under Pa.R.E. 804(a).[2]

Notably, when the Commonwealth filed its motion, it was still within 63 days

of the mechanical run date under Rule 600 of the case. The trial court declined

to find the witness unavailable stating:

> I think you need to cross your T's and dot your I's. I mean, just saying you don't have a complainant to appear, you have to do some searches of – some more detailed search to show me that you can't locate her at all or that you contact her and she finally says, I can't do this, my brain is not working well, as she's told you in the past. I think you need to do a little further investigation into where she may be before you can tell me she's not available. For all we know, you may locate her and she may be willing to come up.

---

[2] **(a) Criteria for Being Unavailable.** A declarant is considered to be unavailable as a witness if the declarant:

> (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;
>
> (2) refuses to testify about the subject matter despite a court order to do so;
>
> (3) testifies to not remembering the subject matter, except as provided in Rule 803.1(4);
>
> (4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or
>
> (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:
>
>> (A)   the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or
>>
>> (B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).

Pa.R.E. 804(a).

- 4 -

N.T., Unavailability Motion Hearing, May 16, 2016, at 17. The trial court then continued the case for 90 days, to give the Commonwealth an opportunity to locate the victim. *Id.* at 18.

Defense counsel filed a Rule 600 motion on July 26, 2016, requesting dismissal. At a hearing, the Commonwealth stated that it had found V.B. and that she was prepared to testify at trial. N.T., Rule 600 Motion, 8/25/16, at 12. The trial court concluded that the Commonwealth had been duly diligent in bringing Garcia to trial and denied the motion. *Id.*

The Commonwealth proceeded with trial on August 31, 2016 and following a one-day bench trial, the court found Garcia guilty of the above-listed offenses. At a sentencing hearing, the court heard from both parties and considered the Pre-Sentence Investigation ("PSI") report. It then imposed the following sentence: 15 to 30 years' incarceration for attempted murder which was merged with the aggravated assault conviction and a consecutive term of two and one-half to five years' incarceration for PIC which was merged with both the simple assault and REAP convictions. Garcia filed a post-sentence motion that was denied by operation of law on July 12, 2017. This timely appeal followed.

On appeal, Garcia raises the following issues:

1. Did not the lower court err in denying [Garcia's] motion to dismiss under Pennsylvania Rule of Criminal Procedure 600(A) where the trial did not commence until well after the adjusted run date and the Commonwealth was not duly diligent in bringing the matter to trial because the Commonwealth failed

to investigate the whereabouts of an otherwise available complainant such that it needed a continuance?

2. Was not the sentencing court's imposition [of] a sentence of 17½ to 35 years of incarceration unreasonable, manifestly excessive and an abuse of discretion where the court failed to conduct an individualized sentencing, did not properly consider the sentencing factors under 42 Pa.C.S.[A.] § 9721, ignored whether the sentence was the least stringent to protect the community, did not consider [Garcia's] rehabilitative needs, and did not sufficiently place its reasons for its sentence on the record?

3. Did not the lower court err and abuse its discretion and impose a manifestly excessive sentence in imposing a consecutive sentence of 2½ to 5 years of incarceration on the charge of possession of an instrument of crime where the sentence is five times longer than the aggravated range because the lower court failed to place sufficient reasons for its deviation on the record and failed to state on the record or otherwise acknowledge the sentencing guidelines?

Garcia's Br. at 4 (trial court's answers omitted).

RULE 600

We review the denial of a motion to dismiss pursuant to Rule 600 for an abuse of discretion. **See Commonwealth v. Kearse**, 890 A.2d 388, 391 (Pa.Super. 2005). "Our scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing and the findings of the trial court. We must view the facts in the light most favorable to the prevailing party." **Id.** (quoting **Commonwealth v. Williams**, 876 A.2d 1018, 1020 (Pa.Super. 2005)).

Rule 600 provides that a "trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). Rule 600

also provides when time should be excluded from the calculation of the deadline. "Any delay in the commencement of trial that is not attributable to the Commonwealth when the Commonwealth has exercised due diligence must be excluded from the computation of time." Pa.R.Crim.P. 600, cmt; **see also** Pa.R.Crim.P. 600(C)(1).[3] Ultimately, the inquiry "is whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence." Pa.R.Crim.P. 600, cmt.

The Commonwealth bears "the burden of demonstrating by a preponderance of the evidence that it exercised due diligence." **Commonwealth v. Bradford**, 46 A.3d 693, 701 (Pa. 2012). "Due diligence is fact specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." **Commonwealth v. Selenski**, 994 A.2d 1083, 1089 (Pa. 2010).

The parties agree that 269 days are excludable; the only dispute is whether the trial court properly excluded the time between May 16, 2016 and the trial date. Garcia maintains that the time is not excludable because the time between May 16th and the trial date was caused by the Commonwealth's delay in ensuring V.B.'s attendance on the original trial date. He maintains

---

[3] "For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1).

that "[t]he Commonwealth sat on its hands for nearly a year, and engaged in the most minimal of effort to notify and secure the presence of its primary witness." Garcia's Br. at 27. We disagree.

First, it was not unreasonable to first contact V.B. one week before trial. Viewing the facts in the light most favorable to the Commonwealth, V.B. had appeared at prior court listings, indicated her willingness to testify, and had not given the Commonwealth any indication at any time of her intention to move away. As the trial court stated:

> [V.B.] . . . had made every effort to participate in the proceedings. [V.B.] testified at the preliminary hearing on December 22, 2014. Perhaps most tellingly, [V.B.] was subpoenaed to appear for the first trial date on October 16, 2015, and responded in the comments on the subpoena to "Please be patient. My brain don't work the same."

TCO at 9.

Second, the Commonwealth exercised due diligence to bring Garcia to trial. Detective Timothy Connell testified that a week before the May 16th trial date, he went to V.B.'s last known address and learned that she had moved to Savannah, Georgia. **See** N.T., 5/16/16 at 8. Once he was notified of this information, he immediately forwarded the information to the assistant district attorney by email on May 11, 2016. **Id.** at 11, 14. The Commonwealth did not delay in notifying the court or defense counsel of its recent knowledge that the victim had relocated as the hearing on this new information was held five days later. In the end, the Commonwealth was able to make contact with V.B. and secure her testimony for trial.

Also, Garcia wrongly conflates the good–faith inquiry for determining the unavailability of a witness under Rule of Evidence 804 with the due diligence inquiry employed under Criminal Rule 600. He in effect concedes as much, stating that "[t]he standard applied under Rule 804 is *nearly identical* to the due diligence standard employed under Rule 600(A)." Garcia's Br. at 24 (emphasis added).

In any event, the standards are not "nearly identical." Under Rule 804, a witness who cannot be found at the time of trial will be deemed unavailable only if a good-faith effort to locate the witness and compel his attendance at trial has failed. "The burden of demonstrating such a good-faith effort is on the party seeking to introduce the prior testimony, and [t]he question of the sufficiency of the preliminary proof as to the absence of a witness is largely within the discretion of the trial judge. The extent to which [a party] must go in order to produce an absent witness is a question of reasonableness." ***Commonwealth v. Cruz-Centeno***, 668 A.2d 536, 541 (Pa. Super. 1995) (citations and quotation marks omitted). In contrast, Rule 600 provides that time will be ruled excludable where the Commonwealth proves by a preponderance of the evidence that it exercised due diligence in bringing the defendant to trial. ***See Commonwealth v. Plowden***, 157 A.3d 933, 941 (Pa.Super. 2017) (*en banc*). With these differing burdens in mind, the trial court's decision to give the Commonwealth more time to locate V.B. before declaring her unavailable for purposes of Rule 804 does not amount to a

determination that the Commonwealth did not act with due diligence for purposes of Rule 600 in its effort to locate her. Therefore, we conclude the trial court did not abuse its discretion by denying Garcia's motion.

DISCRETIONARY SENTENCING

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth v. Allen**, 24 A.3d 1058, 1064 (Pa.Super. 2011). Before reviewing the merits of an appellant's challenge to the discretionary aspects of his sentence, we must determine whether: (1) the appeal is timely; (2) the issue was preserved at sentencing or in a post-sentence motion; (3) the brief includes a Pa.R.A.P. 2119(f) statement;[4] and (4) a substantial question is presented. **See id.**

Here, Garcia's appeal is timely, his issues were preserved, and he provides a Rule 2119(f) statement. We now address whether he has presented a substantial question. Garcia presents two sentencing issues. His first - "the lower court did not sufficiently consider [his] rehabilitative potential or lack of danger to the community," - does not raise a substantial question. Garcia's Br. at 14; **see Commonwealth v. Griffin**, 65 A.3d 932, 936 (Pa.Super. 2013) (concluding claim that trial court failed to consider rehabilitative needs

---

[4] "An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f).

of appellant did not raise a substantial question). His second question fares better. Garcia claims "the court imposed a sentence on a misdemeanor offense that is well above the guidelines and then imposed it consecutively, without stating any basis for these decisions on the record," which raises a substantial question. Garcia's Br. at 14; *see Commonwealth v. Antidormi*, 84 A.3d 736, 759 (Pa.Super. 2014).

We review a challenge to the discretionary aspects of sentencing for an abuse of discretion. *Commonwealth v. Bullock*, 170 A.3d 1109, 1123 (Pa.Super. 2017). An abuse of discretion is present where "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill-will, or arrived at a manifestly unreasonable decision." *Id.* (citation omitted).

At the sentencing hearing, the trial court stated the following:

Mr. Garcia, I am at a loss, to be honest with you. You show no contrition or remorse. And I sat through a trial that made me cringe the whole time. It was worse than any gun case I've ever seen. . . . We could not see on the camera what you and your friend did, but that lady took the stand and described for us what occurred and the horror that occurred inside the vehicle of somebody putting something over her face, trying to strangle her, somebody using a weapon that was a knife stabbing her inside the car. That wasn't enough. You dragged the woman outside the car, and when I tell you it was like seeing a football pl[a]yer trying to kick a field goal with her head, the violence of the foot connecting with that woman's head repeatedly over and over, and you sit and look at me, and honestly I see nothing.

Despite the woman testifying that it was you and despite seeing a film where I see her and see someone who I believe to be you and I found to be you, the physical toll that you put on this woman are all aggravating factors in this case.

> That's what you did to this woman. You gave her a life sentence. She [will] never be the same person as before the beating. She's sentenced to a life in a hospice or nursing home facility. She's sentenced to life in a wheelchair where she can't enjoy anything in life.

N.T., Sentencing, November 5, 2016, at 21-23. The trial court gave its reasoning for the imposed sentence. While Garcia would have preferred that the court focus all of its attention on his mental health issues, the court was not remiss for also considering "the protection of the public" and "the gravity of the offense as it relates to the impact on the life of the victim and on the community." 42 Pa.C.S.A. § 9721(b). The trial court did not abuse its discretion and therefore Garcia's claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/19