J-S52034-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT HARRIS | : | |
| | : | |
| Appellant | : | No. 723 EDA 2018 |

Appeal from the Judgment of Sentence December 3, 2012
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010414-2009

BEFORE: OTT, J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:               **FILED DECEMBER 30, 2019**

Robert Harris appeals from the judgment of sentence entered following

the revocation of his probation. His counsel has filed a brief pursuant to

***Anders v. California***, 386 U.S. 738 (1967), and a petition to withdraw as

counsel. We affirm and grant counsel's petition to withdraw.

In May 2011, a jury found Harris not guilty of murder and conspiracy.[1]

However, it was unable to reach a verdict on firearms not to be carried without

a license, carrying a firearm on public streets in Philadelphia, and possession

of instruments of crime ("PIC").[2] Subsequently, Harris pled guilty in November

2011 to firearms not to be carried without a license and carrying firearms in

public in Philadelphia, and the Commonwealth *nolle prossed* the PIC charge.

---

[1] 18 Pa.C.S.A. §§ 2502 and 903, respectively.

[2] 18 Pa.C.S.A. §§ 6106(a)(1), 6108, and 907, respectively.

The trial court then sentenced Harris to 11½ to 23 months' incarceration followed by five years' probation, with immediate parole.

At that point, prison authorities were supposed to transport Harris to New Jersey, as New Jersey had lodged a detainer for murder and related charges, all arising from a separate incident. However, they instead erroneously released him from prison, and he absconded. He was not apprehended until approximately one year later, in November 2012. During that year, Harris did not report to the Philadelphia Probation Department or to New Jersey authorities.

In December 2012, the trial court held a violation of probation ("VOP") hearing, and revoked Harris's probation. The court resentenced him to three and a half to seven years' incarceration for firearms not to be carried without a license, and one to two years' incarceration for carrying firearms in public in Philadelphia. The sentences were consecutive. Harris filed a motion to reconsider sentence, which the trial court denied. Harris did not file an appeal at that time.

In May 2013, Harris filed a *pro se* Post Conviction Relief Act petition, arguing, in part, that his counsel was ineffective for failing to file a direct appeal. The petition languished for several years, apparently at least in part because the trial judge retired. The court eventually re-assigned it to a different judge who granted it in February 2018, and re-instated Harris's direct appeal rights *nunc pro tunc*. Harris then filed this appeal.

Counsel's ***Anders*** Brief identifies three issues, which we set forth verbatim:

> 1. Whether the appellant's VOP sentence of 4 ½ to 9 years SCI was unreasonable, harsh, excessive and unjust for technical violations.
>
> 2. Whether VOP counsel was ineffective in his representation of the appellant of the VOP Hearing for not requesting an appeal?
>
> 3. Whether the appellant was given a ***Gagnon***[3] 1 and ***Gagnon*** 2 Hearing.

***Anders***' Br. at 4.

Before we assess the substance of the ***Anders*** brief, we must first determine whether counsel's request to withdraw meets certain procedural requirements. ***See Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*). An ***Anders*** brief that accompanies a request to withdraw must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

---

[3] ***Gagnon v. Scarpelli***, 411 U.S. 778 (1973).

- 3 -

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). Counsel must also provide a copy of the *Anders* brief to the client, and a letter that advises the client of the right to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Orellana*, 86 A.3d 877, 880 (Pa.Super. 2014). If counsel has satisfied these requirements, we then conduct "a full examination" of the record "to decide whether the case is wholly frivolous." *Commonwealth v. Dempster*, 187 A.3d 266, 271 (Pa.Super. 2018) (*en banc*) (quoting *Anders*, 386 U.S. at 744).

Here, in the *Anders* brief, counsel provides a procedural and factual history of the case, with citations to the record, discusses the issues arguably supporting the appeal, and explains why counsel concludes those issues are frivolous. *Anders* Br. at 5-15. Counsel served a copy of the *Anders* brief upon Harris, *Anders* Br. at Cert. of Service, and his letter to Harris advised him that he may raise any additional issues before this Court *pro se* or with private counsel. Petition to Withdraw as Counsel, filed May 1, 2019. The *Anders* brief satisfies the necessary requirements.

Harris has not filed any response to the *Anders* brief, either *pro se* or through private counsel. We will therefore address the issues counsel has identified.

The first issue raised in the **Anders** brief would challenge the VOP sentence as excessive. This is a challenge to the discretionary aspects of sentence.

There is no absolute right to appellate review of the discretionary aspects of a sentence. **Commonwealth v. Cartrette** 83 A.3d 1030, 1042 (Pa.Super. 2013) (*en banc*). Rather, we engage in a four-part analysis before addressing such a challenge. We must determine whether: (1) appellant has filed a timely notice of appeal; (2) properly preserved the issue at sentencing or in a motion; (3) appellant's brief includes a Pa.R.A.P. 2119(f) statement; and (4) there is a substantial question that the sentence is not appropriate under the Sentencing Code. **See** 42 Pa.C.S.A. § 9781(b); **Commonwealth v. Austin**, 66 A.3d 798, 808 (Pa.Super. 2013).

Here, these requirements are met. However, the issue is nonetheless frivolous because the court did not find Harris in violation for failure to pay fines and sentence him on that basis. Rather, it found him in violation for absconding and imposed sentence based, in part, on its conclusion that he posed a danger to the public.

We review a challenge to the discretionary aspects of sentencing for an abuse of discretion. **Commonwealth v. Bullock**, 170 A.3d 1109, 1123 (Pa.Super. 2017). Pursuant to Pennsylvania statute 42 Pa.C.S.A. § 9771(b), upon revocation of probation "the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing." Further, a VOP court may impose a sentence of total confinement if it finds

that "(1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court." 42 Pa.C.S.A. § 9771(c). Moreover, "[a] sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." **Commonwealth v. Schutzues**, 54 A.3d 86, 99 (Pa.Super. 2012).

Contrary to the **Anders** brief's statement, the trial court did not find Harris in violation of probation for failure to pay fines. Rather, the court found him in violation for absconding and not reporting to either the Philadelphia probation department or New Jersey authorities for a year. The court said as much when it imposed the VOP sentence:

> You really didn't comply at all with what you were supposed to do and report even once. Obviously, what was paramount in his mind was avoiding the murder prosecution and the homicide prosecution in New Jersey. So I don't think he made a mistake. I think he knew exactly what he was doing.

Trial Court Opinion, filed May 1, 2019, at 10 (quoting N.T., 12/3/12, at 4-5).[4]

---

[4] Counsel included a copy of the December 3, 2012 transcript in the reproduced record. However, the certified record does not include the transcript. In its Pa.R.A.P. 1925(a) opinion, the trial court included quotations from the transcript. Here, we will rely on the facts from the Rule 1925(a) opinion, as no one disputes their accuracy.

The court further explained that it was sentencing Harris based on its conclusion that he poses a danger to the public: "You're a danger in society, a danger [to] the people of Pennsylvania." *Id.* at 9 (quoting N.T., 12/3/12, at 6). This issue is frivolous.

The next issue identified in the *Anders* brief states that VOP counsel was ineffective for failing to appeal. This issue is moot, as Harris obtained an appeal *nunc pro tunc*.

The final issue claims the trial court did not hold *Gagnon I* and *Gagnon II* hearings. It appears that the *Anders* brief is the first time such a claim is raised. Therefore, the claim is waived. Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"). In any event, we agree with counsel that, on the merits, this claim is frivolous.

The procedures for revoking probation are as follows:

> When a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a *Gagnon I* hearing, that probable cause exists to believe that a violation has been committed.

> Where a finding of probable cause is made, a second, more comprehensive hearing, a *Gagnon II* hearing, is required before a final revocation decision can be made.

*Commonwealth v. Allshouse*, 969 A.2d 1236, 1240 (Pa.Super. 2009) (internal citations omitted). At a *Gagnon II* hearing, the court must make two determinations: (1) "Whether the [probationer] has in fact acted in violation of one or more conditions of his [probation]"; and (2) whether the probationer should "be recommitted to prison or should other steps be taken

- 7 -

to protect society and improve chances of rehabilitation." *Id.* (quoting *Gagnon*, 411 U.S. at 784).

Further, this Court has found that a probationer must complain of the lack of a *Gagnon I* hearing before probation is revoked and, if he has not done so, the "probationer will not be heard to complain later." *Commonwealth v. Perry*, 385 A.2d 518, 520 (Pa.Super. 1978) (*en banc*) (incarceration following probation revocation stems from a decision by the revoking court made after an adequate hearing; after revocation of probation, the denial of appellant's preliminary hearing right no longer has any relation to his incarceration).

Here, the docket lists two VOP hearings – one taking place on November 30, 2012, and the second on December 3, 2012. The trial court details the evidence presented at the second hearing, as follows:[5]

> [After his 2011 sentencing hearing, Harris] was given credit for thirty (30) months' time served and was to be immediately paroled, with the sheriff to transport to Elizabeth, New Jersey (Monmouth County) where [Harris] was facing another unrelated murder charge.
>
> However, the following day, November 8, 2011, [Harris] was released from the Curran-Fromhold Correctional Facility (CFCF) in Philadelphia, PA, in error. [Harris] absconded and was not found until November 11, 2012, when he was stopped in Delaware County, PA, following a motor vehicle offense. During the intervening time period from November 8, 2011 to November 11, 2012, [Harris] failed to report to the New Jersey authorities for his open murder case and failed to report to the Philadelphia Probation Department or

---

[5] As noted above, we will use the trial court's facts, as no one disputes the evidence presented at the hearing.

communicate with his probation officer. On December 12, 2012 [Harris] appeared before Judge Wogan at his Violation of Probation (VOP) Hearing at which time the court heard testimony from both [Harris] and his probation and parole officer, Charles Sabo.

Probation and Parole Officer Charles Sabo testified as follows. In addition to confirming the above chronology of events, Mr. Sabo testified that [Harris] had an open warrant related to a murder charge in New Jersey and the authorities there were ready to extradite [Harris] to New Jersey. His recommendation to the court was for [Harris'] probation to be revoked due to his absconding.[3] The Commonwealth recommended revocation and resentencing for [Harris'] failure to report to probation in Philadelphia with special concern given to the fact that [Harris] absconded while he had open murder charges pending in New Jersey.

> [3] A review of the record does not indicate that a Gagnon II was prepared or submitted by the Adult Probation and Parole Department to Judge Wogan for his review prior to or at the time of the Violation of Probation Hearing.

[Harris] testified and did not dispute the factual chronology of events that led to his erroneous release from Curran-Fromhold Correctional Facility. More importantly, [Harris] acknowledged that during the entire year period that he had absconded, he had failed to report to the offices of the Philadelphia Probation and Parole Department as was required as part of his sentence. [Harris] testified as follows:

> THE COURT: [To the appellant] Is there anything you would like to say?
>
> APPELLANT: All right. Like I never intended to run. I was willing to do my probation. It's just that out there, I wasn't running from probation, I was trying to get myself together to go to Jersey. I never, never, never, ever, ever, like, bucked out of probation.

[N.T., 12/3/12,] pp. 5-6.

Further, regarding his failure to appear for court with respect to his murder charges in New Jersey, [Harris] testified as follows:

THE COURT: Well, what steps were you taking to go over to [New] Jersey?

APPELLANT: I needed money. I didn't have a lawyer and I had been accused. I didn't know what was going on over in Jersey.

*Id,* p. 6.

At the conclusion of the Violation of Probation Hearing, Judge Wogan found that [Harris] had violated the terms of his probation for failing to report, as required, to the Philadelphia Probation and Parole Department and further finding that [Harris] posed a danger to the people of Pennsylvania. Judge Wogan therefore revoked [Harris'] probation and resentenced [Harris] to three and one-half (3½) to seven (7) years for Firearms Not to be Carried Without a License and One (1) to two (2) years for Carrying Firearms in Public in Philadelphia, for an aggregate sentence of four and one-half (4¼) to nine (9) years' incarceration.

1925(a) Op. at 4-5 (some internal citations omitted).

This testimony makes it clear that the court in fact held a *Gagnon II* hearing at which it found the Commonwealth established a violation of probation occurred and that incarceration was required. The court heard testimony from Harris' probation officer, including testimony that Harris never reported to probation. The Court also heard from Harris, who attempted to explain why he did not report. Even if the November 30 hearing was not a *Gagnon I* hearing, Harris could get no relief on appeal for a failure to hold a *Gagnon I* hearing. *See Perry*, 385 A.2d at 520. The third issue is also frivolous.

Our independent review of the record has not uncovered any non-frivolous issues for appeal.

Judgment of sentence affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/30/19</u>