J-S45015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LIONEL BULLOCK | : | |
| | : | |
| Appellant | : | No. 3300 EDA 2019 |

Appeal from the PCRA Order Entered October 25, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004571-2014

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                **FILED: JANUARY 25, 2021**

Lionel Bullock appeals *pro se* from the October 25, 2019 order dismissing his petition under the Post-Conviction Relief Act ("PCRA"), and granting counsel's petition to withdraw. We affirm.

The facts giving rise to Appellant's convictions for aggravated assault, simple assault, recklessly endangering another person ("REAP"), and terroristic threats were summarized by this Court on direct appeal.

> Appellant's 92-year-old mother, Jessie Carter, lived on the second floor of her two-story home at 7020 Woolston Avenue in Philadelphia. Appellant and his two minor children also lived in Carter's home. Carter required physical assistance with many daily tasks, and due to her lack of mobility was confined mainly to her bed, using a walker to get to the bathroom. Carter depended on an oxygen machine at all times, which required electricity to operate and was visible in her bedroom. A hospice service provided Carter with equipment.
>
> Michelle Reid, a Certified Nursing Assistant, began working three days each week in August or September of 2013 to assist

Carter with personal hygiene, as well as cleaning her room, obtaining food, and other tasks.

When Reid began the job, Carter was living in very unsanitary and unsafe conditions. Reid attempted to wash Carter's laundry, but Appellant would not permit her to do anything for Carter that required leaving the second floor, including using the washing machine or getting ice for Carter. In addition, Appellant was verbally and emotionally abusive to Reid and Carter. Appellant constantly pestered Reid during her work hours about when she would be leaving the house, telling her frequently that she "didn't have to be here." N.T. Trial, 12/12/14, at 13. Appellant would also tell Carter that she did not need a nurse and that "she was just using" Reid. *Id*. Appellant also spoke to Carter in an angry and negative tone, would yell Bible verses at Carter, and would yell at Carter from throughout the house about the strong odor.

Appellant instructed his minor daughter that she was not allowed to help Carter, her grandmother, and would not allow Carter's niece into the house to care for Carter. In addition, although Meals on Wheels delivered food for Carter to the house, Appellant would not give Carter all of the food from the deliveries, and instead would eat or give away some of the food.

On October 28, 2013, Carter frantically called Reid and told her that "her son, [Appellant], . . . said that the electric would be cut off today and she doesn't know what she's going to do." *Id*. at 25.

When Reid arrived at the house, she expressed her concerns to both Appellant and the PECO employee that shutting off the electricity meant Carter's oxygen machine would not work and she would not be able to breathe. Appellant ignored Reid and insisted on shutting off the electricity without expressing any legitimate reason. Despite Reid's best efforts, the PECO employee eventually shut off the electricity to Carter's home, and Appellant left the property.

Reid immediately attempted to set up a backup manual oxygen tank for Carter. After receiving assistance over the phone from the hospice company, Reid managed to make the manual oxygen tank operable for Carter after a 45-minute struggle. Although the hospice company sent over a few additional tanks,

the oxygen would last a total of only eight hours. Reid eventually called police for assistance.

Sergeant Vincent Butler responded to Carter's home and observed the deplorable conditions in Carter's bedroom. He spoke with Carter, who was upset and scared that she would suffocate and die. He also observed the oxygen machine, to which the electricity "was clearly turned off." *Id*. at 95. Sergeant Butler asked Appellant's minor children to call Appellant. Appellant hung up on Sergeant Butler at least once, and repeatedly stated that he did not want to speak with Sergeant Butler. Appellant refused to inform Sergeant Butler of what arrangements he had made for his mother's care, and told Sergeant Butler "[i]t's your problem." N.T. Trial, 2/9/15, at 11-12. Sergeant Butler clarified that Appellant referred to his mother as "it" during this phone conversation. *Id*.

Sergeant Butler called an ambulance, and the emergency responders transported Carter to the hospital. The hospital later transferred Carter to a hospice care facility, where Carter passed away a few weeks later. Sergeant Butler reported the case to Special Victims Unit. Police eventually arrested Appellant and charged him with Attempted Murder, Aggravated Assault, Simple Assault, REAP, Terroristic Threats, and Neglect of Care of a Dependent Person.

Following a bifurcated bench trial on December 12, 2014, and February 9, 2015, at which Michelle Reid and Sergeant Butler testified, the trial court convicted Appellant of Aggravated Assault, Simple Assault, REAP, and Terroristic Threats. The trial court originally sentenced Appellant to six to twelve years' incarceration for Aggravated Assault, followed by a consecutive term of five years' probation for Terroristic Threats. Both Appellant and the Commonwealth filed Motions for Reconsideration. Following a hearing on August 19, 2015, the trial court imposed a new sentence of ten to twenty years' incarceration for Aggravated Assault, followed by a consecutive term of five years' probation for Terroristic Threats. Appellant filed another Motion for Reconsideration, which the trial court denied [after a hearing] on November 13, 2015.

*Commonwealth v. Bullock*, 170 A.3d 1109, 1115-17 (Pa.Super. 2017).

Appellant filed a timely direct appeal to this Court challenging, *inter alia*, discretionary aspects of his sentence and sufficiency of the evidence. Relevant to this appeal, Appellant argued that the trial court's increase of his sentence following his filing of a motion for reconsideration constituted judicial vindictiveness. Relying upon **Commonwealth v. Robinson**, 931 A.2d 15, 20 (Pa.Super. 2007) (*en banc*), holding that a vindictiveness claim is a waivable challenge to the discretionary aspects of sentence, this Court noted that Appellant had properly complied with the prerequisites for raising such a claim, and addressed it. Nonetheless, Appellant's claim was denied as there was no evidence of vindictiveness presented below. Appellant's petition for allowance of appeal to the Supreme Court was denied. **See Commonwealth v. Bullock**, 84 A.3d 944 (Pa. 2018).

Appellant timely filed a *pro se* PCRA petition in which he identified two instances when trial counsel was ineffective: (1) in failing to challenge the vindictive increase in his original sentence as an illegal sentence; and (2) in failing to present testimony from four witnesses who would have impeached the testimony of the Commonwealth's witnesses. Counsel was appointed and, on September 4, 2019, filed a **Turner**/**Finley**[1] no-merit letter representing that, after his review of the petition and file, the vindictiveness issue was previously litigated and the witnesses would not have offered testimony that

---

[1] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

impeached the Commonwealth's witnesses, and that there were no other issues of merit.

The PCRA court issued Rule 907 notice to Appellant advising him that it intended to dismiss Appellant's PCRA petition based upon counsel's no-merit letter, and that he had twenty days to respond. When Appellant did not file a response, the court concluded that the issues were without merit, dismissed the petition, and granted counsel's motion to withdraw.

Appellant timely appealed and both he and the PCRA court complied with Pa.R.A.P 1925. Appellant presents two issues for our review:

> Ground I. Did Trial Counsel, Thurgood Matthews, Esq., render ineffective assistance of Counsel in raising a challenge to the Honorable Timika Lane's illegal increase Mr. Bullock's sentence as a discretionary aspect of a sentence when decisional law is fractured as to issues of vindictiveness of a judicial officer is that of an illegal sentence when the sentence was increased from a term of to six (6) to twelve (12) years for aggravated assault, followed by five (5) years probation to a term of ten (10) to twenty (20) years for aggravated assault, followed by five (5) years probation in violation of **North Carolina v. Pearce**, 395 U.S. 711 (1969)?

> Ground II. Did Trial Counsel, Thurgood Matthews, Esq., render ineffective assistance of Counsel when he failed to introduce witness testimony that would have supported impeachment of the Commonwealth's witness(es)?

Appellant's brief at 5.

In reviewing the denial of PCRA relief, our standard of review is well settled. "We must determine whether the PCRA court's ruling is supported by the record and free of legal error." **Commonwealth v. Johnson**, 179 A.3d

1153, 1156 (Pa.Super. 2018) (quoting *Commonwealth v. Spotz*, 171 A.3d 675, 678 (Pa. 2017)).

Both of Appellant's claims are grounded in ineffective assistance of counsel. The following principles apply to our review:

> The law presumes counsel has rendered effective assistance. The burden of demonstrating ineffectiveness rests on Appellant. To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." *Commonwealth v. Fulton*, 574 Pa. 282, 830 A.2d 567, 572 (2003). Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

*Johnson*, *supra* at 1158 (some citations omitted). "[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (internal quotation marks omitted) (citing 42 Pa.C.S. § 9543(a)(2)(ii)).

Appellant contends first that trial counsel was ineffective by presenting his vindictive sentencing claim as a discretionary sentencing claim rather than as a legality of sentencing claim, and that counsel had no strategic basis for doing so. He claims that the result would have been "dramatically different" had the issue been raised as an illegal sentencing claim, and that the case

would have been remanded for resentencing. Appellant's brief at 15. While Appellant acknowledges that his sentence was below the statutory maximum, and thus, not technically illegal, and that current law under **Robinson**, **supra**, recognizes that a vindictiveness claim is a discretionary sentencing claim, he argues that **Robinson** was incorrectly decided. In support of his position, Appellant directs our attention to Judge Klein's dissent in **Robinson**, maintaining that vindictiveness "is not only a claim of an unlawful sentence, but also a claim of an unconstitutional sentence," that could not be dismissed for failure to file a Pa.R.A.P. 2119(f) statement. **Id**. at 28.

**Robinson** remains the law of this Commonwealth. We held therein that claims of vindictiveness in sentencing do not fall within "the narrow class of cases" including: "(1) claims that the sentence fell outside of the legal parameters prescribed by the applicable statute; (2) claims involving merger/double jeopardy; and (3) claims implicating the rule in **Apprendi v. New Jersey**, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)." **Robinson**, **supra** at 21 (internal quotation marks omitted). We recognized that vindictiveness is essentially a claim "that the court exercised its discretion in a way that is harsh, unreasonable, and motivated by impermissible factors such as personal animus or revenge." **Id**. The fact that due process or constitutional questions may be implicated does not change that.

We held further in **Robinson** that no presumption of vindictiveness arises where both an appellant and the Commonwealth file motions for

reconsideration. **Robinson**, **supra** at 24. Moreover, the trial court has the discretion, as a matter of law, to modify its own sentence in response to the Commonwealth's motion. **Id**. As we held in **Commonwealth v. Tapp**, 997 A.2d 1201, 1205 (Pa.Super. 2010), absent a presumption, an appellant has to prove vindictiveness, which this Court held on direct appeal Appellant failed to do. **See Bullock**, **supra** at 1125 (holding presumption inapplicable and denying relief because "Appellant failed to offer any evidence in the lower court demonstrating that the basis for his increased sentence was personal or motivated by the trial court's vindictiveness toward Appellant based on his decision to file a Motion to Reconsider.").

Trial counsel preserved the vindictive sentencing issue, complied with all prerequisites for its review on direct appeal as a discretionary sentencing claim, and this Court addressed the issue on the merits. There was no waiver. **Cf. Robinson** (providing that where the consequence of vindictive sentencing claim being a discretionary sentencing claim meant that appellant waived the claim when the Commonwealth objected to his failure to file a Rule 1119(f) statement with his brief). Although Appellant did not prevail on this issue on direct appeal, Appellant offers no insight as to how this claim would have fared better had it been characterized as an illegal sentencing claim rather than as a discretionary sentencing claim. Absent such analysis, we have no basis to disturb the PCRA court's finding that this claim was fully litigated on direct appeal, and hence, this claim is ineligible for PCRA relief. **See** 42 Pa.C.S.

§ 9543(a)(3) (providing that in order to be eligible for PCRA relief, a petitioner must establish that that the allegation of error has not been previously litigated or waived). Furthermore, Appellant failed to establish that the claim had arguable merit or that he suffered prejudice as a result of counsel's course of action. Appellant's first claim fails.

Appellant second issue involves trial counsel's alleged failure to call four witnesses: Pharoah Sanders, his nephew; Miyah Bullock; Lionel Bullock, Jr., his son; and Sandra Hall. According to Appellant, these witnesses would have testified that Appellant did not neglect his mother, but that he would assist her in putting on her shoes and going up and down stairs, and that he and three others would care for her twenty-four hours per day. *See* PCRA Petition, 7/18/18, at 17-18.

To prevail on a claim for ineffective assistance of counsel for failure to call witnesses, an appellant must demonstrate that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Sneed***, 45 A.3d 1096, 1109 (Pa. 2012). To demonstrate prejudice, the petitioner must establish that the testimony would have been beneficial under the circumstances of the case and established a reasonable probability that the outcome of the trial would have been different. ***Id***.

Preliminarily, we note that Appellant did not aver in his PCRA petition that trial counsel knew or should have known of the existence of these witnesses, which is the third requirement for proving counsel ineffectiveness for failure to call a witness. Nor was that deficiency cured by Appellant's representation in his appellate brief that he requested that counsel call these witnesses, that counsel was aware of them, and each was willing to testify on Appellant's behalf. *See* Appellant's brief at 16.[2]

Additionally, the PCRA court noted that none of Appellant's witnesses would have offered testimony refuting evidence refuted the testimony of the Commonwealth's witnesses that on October 28, 2013, "(1) Appellant knew the electricity was going to be turned off, (2) [Carter] required electricity for her breathing machines to operate, (3) Appellant provided no alternate means of care for [Carter], (4) and despite these issues, Appellant insisted on shutting off the electricity." PCRA Court Opinion, 2/24/20, at 9. The PCRA court concluded that all of the proffered testimony from these witnesses related to dates prior to October 28, 2013, and while the testimony of Sanders,

---

[2] The Commonwealth contends that Appellant's failure to attach affidavits from the witnesses identified in his *pro se* PCRA petition was fatal to this claim. The Commonwealth is incorrect. It is sufficient if a petitioner presents a summary of the statement and that it is signed either by the witness, his attorney, the defendant's attorney, or the petitioner himself. *See Commonwealth v. Pander*, 100 A.3d 626, 641 (Pa.Super. 2014) (*en banc*) (citing Pa. Senate Journal, 1st Spec. Sess., June 13, 1995, at 217 and *Commonwealth v. Brown*, 767 A.2d 576, 583 (Pa.Super. 2001), for proposition that a petitioner is not required to attach sworn affidavits to his PCRA petition in support of request for an evidentiary hearing).

Miyah, and Lionel, Jr. was arguably relevant to negate the charge of neglect of a care-dependent person, Appellant was acquitted of that charge. Thus, their testimony did not even pertain to the October 28, 2013 events forming the basis of Appellant's convictions for aggravated assault, its lesser-included offenses, or terroristic threats, all of which arose from Appellant's insistence that the electricity powering Carter's oxygen tank be turned off. Therefore, Appellant cannot demonstrate prejudice due to any alleged ineffectiveness by trial counsel in this regard. No relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/21