J-S34037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                          :                  PENNSYLVANIA
                          :
               v.                    :
                          :
                          :
BRAHEEN ALPHONSO ACRES        :
                          :
            Appellant         :    No. 122 WDA 2022

Appeal from the PCRA Order Entered December 23, 2021
In the Court of Common Pleas of Indiana County Criminal Division at
No(s): CP-32-CR-0000989-2016

BEFORE: DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:           **FILED: OCTOBER 17, 2022**

Braheen Alphonso Acres (Acres) appeals from the order denying his petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, in the Court of Common Pleas of Indiana County (PCRA court). He claims the ineffective assistance of trial counsel for failing to file a pretrial motion to suppress the victim's drive-up identification and the ineffective assistance of direct appeal counsel for failing to argue that the court erred in overruling trial counsel's objection and admitting certain surveillance videos because they were more prejudicial than probative.[1] We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Acres was represented at trial by Attorneys Taylor Johnson and Robert Bell from the Indiana County Public Defender's Office. Due to a conflict of interest

*(Footnote Continued Next Page)*

We take the following factual background and procedural history from the PCRA court's December 23, 2021 opinion, our memorandum opinion in Acres' direct appeal, and our independent review of the record.

**I.**

On November 21, 2016, the Commonwealth filed an information against Acres charging him with thirteen counts of burglary, aggravated indecent assault, criminal trespass, theft and harassment.[2]  A previous panel of this Court explained in its October 2, 2018 memorandum opinion:

> The charges against [Acres] originate from a succession of events that occurred in the early morning hours of September 4, 2016, on or around Wayne Avenue in Indiana, Pennsylvania. Brady Moran testified that he was asleep in his bedroom on Wayne Avenue when he was woken by [Acres], who he did not recognize, opening his bedroom door.  (**See** N.T. Trial, 5/23/17, at 107). Acres told Moran that he was there with Moran's roommates and would lock up when he left, and Moran went back to sleep.  In the morning, Moran and his roommate, William Haley, discovered that items were missing from their residence.
>
> Shannon Phillips, who was a guest sleeping in the living room of Moran's residence, corroborated that between 3:00 and 4:00 a.m., she saw [Acres] in Moran's bedroom doorway and heard him say "he heard there was a party at the house," but Moran told [Acres] there was no party and ordered him to leave. (**See id.** at 126-127).

---

that arose between Acres and the Public Defender's Office shortly after trial, the court appointed Attorney Christopher Nakles to represent him at sentencing and on direct appeal.  (**See** PCRA Court Opinion, 12/23/21, at 1-2).

[2] 18 Pa.C.S. §§ 3502(a)(1), 3125(a)(1), 3503(a)(1)(i), 3921(a), 2709(a)(1).

Later that morning, for reasons that are not explained in the record, police called Haley, Moran's roommate, about items missing from the residence, and Haley and Moran went to the police station and claimed them. (*See id.* at 111, 115).

Also on the morning of September 4, 2016, Adrianna Lynch was sleeping on the couch at her residence on Wayne Avenue. (*See id.* at 22-24). She woke around 6:15 a.m. and [Acres], who she did not know, was performing oral sex on her. (*See id.* at 26-27). Lynch ordered him to leave and "push[ed] him through ... the kitchen" and out the door. (*See id.* at 28). Lynch called the police and gave a statement to Indiana Borough Police Officer Randy Allmendinger. (*See id.* at 28-30). The officer subsequently informed Lynch that the police had someone in custody, and Lynch identified [Acres]. (*See id.* at 30-31).

[On cross-examination, Acres' counsel elicited testimony from Lynch in which she stated that she weighed 130 pounds and had turned twenty-one just a few months before the subject incident. (*See id.* at 32-33). She admitted that she began drinking beer with friends at approximately 7:00 p.m. and they played a game for approximately one-half hour in which the goal was to drink as much as possible. (*See id.* at 33-34). After that, she and her friends went to another home where she drank cider before going to three bars until 2:00 a.m. (*See id.* at 36-38). She customarily drank approximately two drinks per hour. (*See id.*). Lynch conceded that she slept for two hours from 4:30 a.m. until 6:30 a.m. when Acres woke her. The room was dim. (*See id.* at 39-40). She agreed that, when she went to the police station at 8:00 a.m., she had little sleep, was still intoxicated from the night before and had been crying. (*See id.* at 40). Prior to getting in the police car to identify Acres, she was told the police had a suspect and when they drove her to his location, she saw Acres, an African American male, in handcuffs and surrounded by police. (*See id.* at 40-41).]

Additionally, Alexandra Stanley testified that on the morning of September 4, 2016, she was woken by a stranger in her bedroom on Wayne Avenue. (*See id.* at 96). [Acres], who she did not know, was at the foot of her bed and going through her wallet. (*See id.* at 98). Stanley was scared and told him to leave. (*See id.*) [Acres] left, but returned after a couple of minutes and made sexual comments to her. (*See id.* at 99). By that time, officers from the Indiana University (IUP) Police Department and

Indiana Borough Police Department arrived and apprehended [Acres]. (***See id.***).

IUP Police Lieutenant Melvin Cornell and Indiana Borough Police Lieutenant Justin Schawl testified to responding to a call about a possible burglary at Stanley's apartment. (***See id.*** at 141, 161). When they arrived, they observed [Acres] inside, and after a struggle, apprehended him. (***See id.*** at 143-147, 163). Items recovered from [Acres]s' person and a backpack found in Stanley's bedroom matched items missing items from Moran and Haley's residence.

[Lieutenant Schawl also testified that they elected to do a drive-up identification of Acres with Lynch because he matched her description of the assailant and getting an identification immediately after the crime serves public safety because, if he had not been the correct person, the police could immediately begin searching for someone else. (***See id.*** at 175-76). He explained that they purposely positioned Acres so that Lynch would not see that he was in handcuffs from the car. (***See id.*** at 177).]

(***Commonwealth v. Acres***, 2018 WL 4704508, unreported memorandum, at *1 (Pa. Super. filed Oct. 2, 2018), *appeal denied*, 208 A.3d 57 (Pa. 2019) (footnotes omitted, some record citations and formatting provided)).

As the PCRA court explains, the Commonwealth also introduced:

… two surveillance videos of [Acres] walking up to the porches of residences in the same block where his other offenses occurred and attempting to enter one of those residences. [Acres'] counsel objected pursuant to Pennsylvania Rule of Evidence 403, on the basis that his evidence was unfairly prejudicial for leaving the impression that [Acres] was entering other homes in the area or was suspected of crimes in addition to those he was charged for. The court overruled the objection, finding the probative value of the video evidence showing [Acres'] identity and presence in the area where crimes were occurring outweighed the danger of unfair prejudice. Additionally, when addressing the objection, the court commented that the videos were also admissible pursuant to Pennsylvania Rule of Evidence 404, as evidence of intent, opportunity, planning, and motive.

- 4 -

(PCRA Ct. Op., at 7) (some capitalization omitted); (*see also* N.T. Trial, 154-58, 181-84).

During his closing argument, Attorney Johnson focused at length on Lynch's credibility. He reminded the jury that Lynch had been heavily drinking for hours before the incident, and that at the time of speaking to police at 8:00 a.m., she only had two hours of sleep and was still intoxicated and emotional. (*See* N.T. Trial, at 222-223). She was aware that a suspect had been apprehended when she went to view Acres, who was handcuffed and surrounded by police. (*See id.* at 224-25). He pointed out that there was no photo array so Lynch had only one suspect from which to choose. (*See id.* at 225). Acres elected not to testify on his own behalf or present any witnesses.

On May 25, 2017, the jury convicted Acres of three counts each of burglary-overnight accommodations (person present) and criminal trespass-entering a structure; two counts each of theft by unlawful taking-movable property and harassment-subjecting another to physical contact; and one count of aggravated assault without consent. After the court appointed Attorney Nakles as sentencing counsel, it sentenced Acres to an aggregate term of not less than nine nor more than thirty years' imprisonment on February 23, 2018. Acres did not file post-sentence motions, but on direct

appeal, he argued a **Brady**[3] violation and a **Batson**[4] claim. He raised a challenge to the admission of the surveillance videos in the Rule 1925(b) statement but did not argue it in his brief. On October 3, 2018, this Court affirmed the judgment of sentence and the Pennsylvania Supreme Court denied further review on May 1, 2019.

Acres filed a timely *pro se* PCRA petition on July 31, 2020. Appointed counsel filed an amended petition on March 1, 2021, challenging, *inter alia*, trial counsel's failure to file a motion to suppress Lynch's drive-up identification and direct appeal counsel's failure to challenge the admission of the surveillance videos at trial. The court held a hearing on July 6, 2021, at which both of Acres' trial counsel testified about the identification and appellate counsel testified about the surveillance videos. The PCRA court explains:

> … Attorney Bell testified that he did not believe there was a legal issue with the identification and if he had believed one existed he would have filed a motion *in limine* or objected to its admissibility. Rather, during cross-examination, he employed the trial strategy of impressing upon the jury how the identification was suggestive. (**See** N.T. PCRA Hearing, 7/06/21, at 51-53). Attorney Johnson also testified that his research of the circumstances did not lead him to believe that any constitutional issues existed with respect to the identification. He believed the best strategy was to attack the credibility of the identification at trial and argued this point in his closing argument. (**See id.** at 58).

---

[3] **Brady v. Maryland**, 373 U.S. 83 (1963).

[4] **Batson v. Kentucky**, 476 U.S. 79 (1986).

* * *

> [As to the surveillance videos claim,] Attorney Nakles explained that at the time he filed a Rule 1925(b) statement he had not yet had the opportunity to fully review the record. In an effort to avoid waiving an issue due to omission, he included as much as possible in the statement. (**See id.** at 34). After reviewing the record, Attorney Nakles decided not to brief the issues he had initially raised regarding the videos in an effort not to burden down the brief when he did not feel that he had a "makeable argument[.]" (**Id.** at 37). …

(PCRA Ct. Op., at 4-5, 7) (some capitalization omitted; record citation formatting provided).

On December 23, 2021, the PCRA court denied Acres' petition. He timely appealed and filed a court-ordered statement of errors on appeal. **See** Pa.R.A.P. 1925(b).[5]

## II.

## A.

Acres alleges the ineffective assistance of trial and appellate counsel. In considering an ineffective assistance of counsel claim, we observe first that counsel is presumed effective and that a petitioner bears the burden to prove

---

[5] In reviewing the denial of PCRA relief, our standard of review is limited to whether the record supports the PCRA court's factual determinations and whether its decision is free of legal error. **See Commonwealth v. Lopez,** 249 A.3d 993, 998 (Pa. 2021). We apply a *de novo* standard of review to the PCRA court's legal conclusions. **See Commonwealth v. Fears**, 86 A.3d 795, 804 (Pa. 2014).

otherwise. *See Fears*, 86 A.3d at 804. To establish an ineffectiveness claim, a defendant must prove:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) [appellant] suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

*Id.* (citation omitted). "Failure to prove any prong of this test will defeat an ineffectiveness claim. When an appellant fails to meaningfully discuss each of the three ineffectiveness prongs, he is not entitled to relief, and we are constrained to find such claims waived for lack of development." *Id.* (citations and internal quotation marks omitted).[6]

With these legal principles in mind, we turn to Acres' allegations.

**B.**

Acres claims that trial counsel was ineffective for failing to file a motion to suppress Lynch's drive-up identification. He maintains that the circumstances of the identification were unduly suggestive since he is an African-American male who was in handcuffs and surrounded by police at the time. (*See* Acres' Brief, at 23, 29-31). He also contends that because Lynch

---

[6] Instantly, although Acres initially sets forth the three prongs necessary for establishing an ineffective assistance of counsel claim, he utterly fails to address the reasonable basis or probability of a different outcome requirements, focusing his entire analysis on the underlying merits of his claims. (*See* Acres' Brief, at 24-31). Hence, his issues are waived for lack of development. *See Fears*, 86 A.3d at 804. Moreover, as explained more fully above, they would not merit relief.

made the identification soon after she had consumed several alcoholic beverages and when she only had approximately two hours of sleep, it was unreliable. (**See id.**).

To establish a claim of ineffective assistance of trial counsel for failing to file a motion to suppress, "[t]he defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." **Commonwealth v. Watley**, 153 A.3d 1034, 1044 (Pa. Super. 2016), *appeal denied*, 169 A.3d 574 (Pa. 2017). "[T]he mere fact that [his] trial strategy ultimately proved unsuccessful does not render it unreasonable." **Commonwealth v. Spotz**, 896 A.2d 1191, 1235 (Pa. 2006) (citation omitted).

It is well-settled that "[g]enerally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." **Commonwealth v. Puksar**, 951 A.2d 267, 277 (Pa. 2008) (citation omitted); **see also Spotz**, 896 A.2d at 1235.

Instantly, Attorney Bell testified at the PCRA hearing that he would have filed a pretrial motion to suppress Lynch's statement, but he did not believe that there was any legal issue. He believed the best trial strategy was the one he pursued: he cross-examined Lynch about the identification to impress upon the jury that it was suggestive. (**See** N.T. PCRA Hearing, at 51-53).

Attorney Johnson similarly testified that based on his legal research about the circumstances surrounding the identification, he did not believe there was any constitutional issue and, instead, believed the best trial strategy was attacking the identification's credibility at trial and arguing the identification's unreliability to the jury in his closing. (*See* N.T. PCRA Hearing, at 58); (N.T. Trial, at 222-24).

Our independent review of the record confirms that counsel engaged in a thorough cross-examination of Lynch in which she made several concessions for the jury's consideration of her credibility and the weight to afford her identification of Acres. She admitted to drinking from the hours of 7:00 p.m. until 2:00 a.m. and to still being under the influence when she spoke to police. Lynch conceded that she heard at the police station that a suspect had been apprehended, that the lighting was dim at the time she was attacked and stated that Acres was in handcuffs and surrounded by police when she identified him as the assailant. (*See* N.T. Trial, 32-41). In his closing argument, counsel reminded the jury of all these circumstances and argued the suggestive nature of the identification. (*See id.* at 222-25).

Based on our review of the record, trial counsel had a reasonable trial strategy designed to effectuate Acres' interest, and we deem counsel's assistance constitutionally effective. *See Puksar*, 951 A.2d at 277 (Pa. 2008); *Spotz*, 896 A.2d at 1235. Further, as stated previously, Acres abandons any effort to demonstrate that but for trial counsel's strategy, the

verdict would have been different.[7]  **See Fears**, 86 A.3d at 804; **Watley**, 153 A.3d 1034.  Hence, because Acres has failed to plead and prove the three prongs necessary to establish his claim that trial counsel were ineffective, it lacks merit.

## C.

Acres claims that direct appeal counsel was ineffective for failing to argue that the trial court erred in denying trial counsel's objection and permitting the admission of certain videotape surveillance.  The tapes showed him on Wayne Avenue after midnight on the night of the incident walking around one home and trying to enter another, which he maintains was more prejudicial than probative.  (**See** Acres' Brief, at 24-27).

---

[7] Although Lynch was the only eyewitness to the incident that occurred at her residence, there was sufficient circumstantial evidence on which the jury could base its verdict.  There was video surveillance of Acres in the area, shortly before the incidents herein, walking around one residence and attempting to break into another.  (**See** N.T. Trial, at 154-58, 181-84).  Moran, Haley and Phillips, their guest, testified that Acres broke into their home on Wayne Avenue before Lynch's and stole items later found in Acres' backpack.  (**See id.** at 106-09, 116-19, 126-27).  Acres was apprehended in Stanley's Wayne Avenue home shortly after his criminal actions in Lynch's apartment, going through Stanley's wallet and commenting about committing the same sexual act as that performed on the non-consenting Lynch.  (**See id.** at 98-99; 163-75).  The jury could reasonably reach the conclusion that Acres committed the crime against Lynch, even without her eyewitness identification.  Therefore, Ames would be unable to prove the third prong of the ineffectiveness test, reasonable likelihood of a different outcome, even if he had attempted to argue it.

It is well-settled that the admission of evidence is within the trial court's discretion. *See Commonwealth v. Hunzer*, 868 A.2d 498, 510 (Pa. Super. 2005), *appeal denied*, 880 A.2d 1237 (Pa. 2005). "[A]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence or the record." *Commonwealth v. Bullock*, 170 A.3d 1109, 1117 (Pa. Super. 2017), *appeal denied*, 184 A.3d 944 (Pa. 2018) (citation omitted).

Pursuant to Pennsylvania Rule of Evidence 404, "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, the evidence "may be admissible [to prove] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).[8] "In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.*

The trial court determined that the video surveillance of Acres in the immediate area where crimes were occurring served as evidence of Acres' opportunity, planning, motive and intent, the probative value of which

---

[8] Acres does not dispute that the videotapes were properly admitted as evidence of intent, motive, identity or plan. (*See* Acres' Brief, at 25); Pa.R.E. 404(b)(2).

outweighed any potential prejudice. (**See** PCRA Ct. Op., at 6-7); (N.T. Trial, 154-58, 181-84).

Attorney Nakles testified at the PCRA hearing that he only included the videotape issue in the Rule 1925(b) statement because he had not yet read the transcript and did not want to waive any potential issues. (**See** N.T. PCRA Hearing, at 34). Upon reviewing the record, he decided not to brief the issue because he did not believe it was a "makeable argument" and, instead, opted for a different strategy of not overburdening the appeal brief by including this claim. (**Id.** at 37).

This was a reasonable strategy designed to effectuate Acres' interest. Acres concedes that the trial court properly found that the surveillance evidence was relevant to show motive, intent, identity or plan. (Acres' Brief, at 26). He does not allege, let alone prove, that the court's admission of this evidence was manifestly unreasonable or the result of bias, prejudice, ill-will or partiality, and our independent review of the record confirms that the court did not so act. **See Bullock**, 170 A.3d at 1117. Therefore, Attorney Nakles' strategy of not raising a meritless claim to narrow the appellate issues was reasonable and we will not find him ineffective on this basis. **See Spotz**, 896

A.2d at 1210 ("Counsel will not be deemed ineffective for failing to raise a meritless claim.") (citation omitted). This issue does not merit relief.[9]

Order affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/17/2022</u>

---

[9] Moreover, as we noted in the previous issue, even if the admission of the evidence were error, it would have been harmless where the jury heard eyewitness testimony that Acres had entered other homes in the area that night, stole property and talked about performing the same sexual acts on another victim. Hence, the jury could have reached its verdict based on this circumstantial evidence, even without the video surveillance. Therefore, not only was direct appeal counsel's strategy of not raising an issue regarding the video surveillance reasonable, had he done so, it would not have changed the outcome of the direct appeal even if it had underlying merit.